UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

PERPETUAL ASHARE,                                    Case No.: 25-cv-02834

                              Plaintiff,

              -against-

SONTAG & HYMAN, P.C., MARC H. HYMAN,
EAST HARLEM MEC PARCEL C L.P., EAST
HARLEM MEC PARCEL C HOUSING FUND
DEVELOPMENT CORPORATION,
METRO 125, INC., and RICHMAN PROPERTY
SERVICES, INC.,

                              Defendants.
-------------------------------------------------------------------X

---

### MEMORANDUM OF LAW IN SUPPORT OF SONTAG & HYMAN DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

**MARSHALL DENNEHEY**
Matthew K. Flanagan
Michael G. Jacobson
Attorneys for Defendants
***Sontag & Hyman, P.C. and Marc H. Hyman***
Wall Street Plaza, 88 Pine Street, 29th Floor
New York, New York 10005
Telephone: (212) 376-6400
Fax: (212) 376-6490

# <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES …………………………………………….………..……..ii

PRELIMINARY STATEMENT …………………………………………………………1

SUMMARY OF ARGUMENT ………………………………………………….....…..1

STATEMENT OF FACTS ……………………………………………………….…..…2

LEGAL STANDARD …………………………………………………………………...6

ARGUMENT ……………………………………………………………………………8

   I.  THE NOERR-PENNINGTON DOCTRINE BARS PLAINTIFF'S FDCPA
      CLAIM……………………………………………………………………….…..8

   II.  PLAINTIFF'S SECOND CLAIM – SEEKING RECOVERY PURSUANT TO N.Y.
      GEN. BUS. L. § 349 - MUST ALSO BE DISMISSED BECAUSE IT FAILS TO
      ALLEGE A DECEPTIVE, CONSUMER-ORIENTED PRACTICE…………..……13

   III. PLAINTIFF'S THIRD CLAIM - ALLEGING A VIOLATION OF JUDICIARY
      LAW § 487 - MUST ALSO BE DISMISSED, AS IT FAILS TO ALLEGE FACTS,
      WITH THE REQUISITE PARTICULARITY, ESTABLISHING A VIOLATION
      OF THE STATUTE …………………………………………..………..…15

   IV. PLAINTIFF'S FOURTH CLAIM - FOR NEGLIGENCE AND GROSS
      NEGLIGENCE - MUST ALSO BE DISMISSED, AS (A) S & H DID NOT OWE
      PLAINTIFF A DUTY, (B) PLAINTIFF ALLEGES INTENTIONAL CONDUCT,
      NOT NEGLIGENT CONDUCT, BY S & H, AND (C) PLAINTIFF DOES NOT
      ALLEGE FACTS DEMONSTRATING RECKLESS INDIFFERENCE …………..17

      A. S & H did not owe Plaintiff a duty ………………………………….……18

      B. Because Plaintiff's allegations of filing lawsuits and sending demand letters
         are intentional actions, Plaintiff fails to state a claim for negligence or gross
         negligence …………………………………………………………..18

      C. Plaintiff has not plausibly alleged that Attorney Defendants acted with
         reckless indifference …………………………………………….………..19

CONCLUSION …………………………………………………………….………..20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*AJ Energy LLC v. Woori Bank,*
    No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019),
    aff'd, 829 Fed. Appx. 533 (2d Cir. 2020) …………………………………….………8

*Am. Tel. & Tel. Co. v. City of New York,*
    83 F.3d 549, 556 (2nd Cir. 1996) …………………………………………..……17

*AMW Materials Testing, Inc. v. Town of Babylon,*
    584 F.3d 436, 454 (2d Cir.2009) …………………………………………..……18

*Arcamone-Makinano v. New York City Dep't of Bldgs.,*
    2013 WL 1459255 (Sup. Ct.  Queens County 2013) …………………………..……11

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) …………………………………………………………...6

*Baptiste-Elmine v. Richland & Falkowski, PLLC,*
    No. 21-CV-4994 , 2025 WL 974346, at *12 (E.D.N.Y. Apr. 1, 2025) ……………….…..8

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC,*
    692 F.3d 42, 61 (2d Cir. 2012) ……………………………………………….....17,18

*Bell A. Corp. v. Twombly,*
    550 U.S. 544, 555 (2007) …………………………………………………………….6

*Bill Birds, Inc. v. Stein L. Firm, P.C.,*
    35 N.Y.3d 173, 180  (2020) …………………………………………………………16

*Bottone v. Roche,*
    2024 WL 869552, at *6 (S.D.N.Y. Feb. 28, 2024) ………………………………...15

*Brake v. Slochowsky & Slochowsky, LLP,*
    *504 F. Supp. 3d 103, 116 (E.D.N.Y. 2020)*……………………………………...………15

*Bryant v. Silverman,*
    284 F. Supp. 3d 458, 469 (S.D.N.Y. 2018) …………………………………...…15

*Collazo v. Netherland Prop. Assets LLC,*
    35 N.Y.3d 987, 990 (2020) ……………………………………………...……13

*Chazon, LLC v Maugenest,*
    19 NY3d 410, 416 (2012) ………………………………………………………4,10

*Delaney v. HC2, Inc.,*
    761 F. Supp.3d 641, 663 (S.D.N.Y. 2025) ……………...………………………16,18

*Doo v. Berger,*
    227 A.D.2d 435, 436, 642 N.Y.S.2d 694 (2d Dep't 1996) …………………………...18

*Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP,*
    2018 WL 2247206, at *1 (S.D.N.Y. May 16, 2018) ………………………..…..8, 14

*Eze v. City Univ. of New York at Brooklyn Coll.*,
No. 11-CV-2454, 2011 WL 6780652, at *6 (E.D.N.Y. Dec. 27, 2011) ........................19

*Global Network Communications, Inc. v. City of New York*,
458 F.3d 150, 157 (2d Cir. 2006) ………………………………………….....…....…..7

*Goneyv. SuttonPark LLC*,
No. 20 CIV. 5387 (AKH), 2025 WL 486705, at *1 (S.D.N.Y. Feb. 12, 2025) ………....17

*E. Harlem MEC Parcel C, L.P. v Smalls*,
82 Misc 3d 127(A) (App T. 1st Dep't  2024) ………………………………………4,10

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) …………………………………………………...……..8

*Eliya, Inc. v. Steven Madden, Ltd.*,
No. 15 CV 1272, 2019 WL 5694315, at *6 (E.D.N.Y. Aug. 5, 2019), *report and
recommendation adopted*, No. 15 CV 1272, 2019 WL 4593451(E.D.N.Y. Sept. 23,
2019)………………………………………………………………………………12

*Finch v. Slochowsky & Slochowsky, LLP*,
No. 19-CV-6273, 2020 WL 5848616, at *5 (E.D.N.Y. Sept. 30, 2020)……………..…..12

*International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
146 F.3d 66, 70 (2d Cir. 1998) ………………………………………………………….7

*Jean v. Chinitz*,
163 A.D.3d 497 (1st Dep't 2018) ………………………………………..………15

*Johnson v. Pugh*,
No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ………………...7

*Law Practice Mgmt. Consultants, LLC v. M & A Counselors & Fiduciaries, LLC*,
599 F. Supp. 2d 355, 358 (E.D.N.Y. 2009) …………………………………..…….6,7

*M+J Savitt, Inc. v. Savitt*,
2009 WL 691278, at *12 (S.D.N.Y. Mar. 17, 2009) …………………………….…17

*Michalic v. Klat*,
128 A.D.2d 505, 506 (2d Dep't 1987) …………………………………………….18

*Morrow v. MetLife Invs. Ins. Co.*,
177 A.D.3d 1288 (App. Div. 4th Dep't 2019) ……………………………..…………18

*Nelson v. Kalathara*,
48 A.D.3d 528 (2d Dept. 2008) ……………………………………………………….18

*Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.*,
751 F. Supp. 3d 195, 205 (E.D.N.Y. 2024) ……………………………………18,19

*Ormonde Equities LLC v Jacoby*,
81 Misc 3d 137[A], 2023 NY Slip Op 51416[U] [App Term, 1st Dept 2023]………...…..10

*Pasternack v. Laboratory Corp. of America Holdings*,
59 N.E.2d 485, 490 (2016) ………………………………………………………..17

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
    507 F.3d 117, 121 (2d Cir. 2007) …………………………………………………………..7

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*,
    508 U.S. 49, 60 (1993) ……………………………………………………………………9

*Primetime 24 Joint Venture v. Nat'l Broad., Co.*,
    219 F.3d 92, 99–100 (2d Cir. 2000) ……………………………………………………...8,9

*Ray v. Watnick*,
    182 F. Supp. 3d 23, 28 (S.D.N.Y. 2016) ……………………………………………...…15

*Remler v. Cona Elder L., PLLC*,
    No.  2022 WL 4586243, at *6 (E.D.N.Y. Sept. 29, 2022) ………………………....15,16,17,19

*Scheur v. Rhodes*,
    416 U.S. 232, 236 (1974) ……………………………………………………...……7

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256, 264 (2d Cir. 1995) ……………………………………………………...…13

*Singh v.* NYCTL 2009-A Tr.,
    No. 2016 WL 3962009, at *4 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F.
        App'x 76 (2d Cir. 2017) …………………………………………………………8,9

*Shad v. Zachter PLLC*,
    2024 WL 2020794, at *6 (S.D.N.Y. Mar. 7, 2024), *report and recommendation adopted*,
    2024 WL 1955448 (S.D.N.Y. May 3, 2024)………………………………………………15

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236, 240 (2d Cir. 2002) ……………………………………………………...7

*Swiatkowski v. Citibank*,
    745 F.Supp.2d 150, 162 (E.D.N.Y. 2010) …………………………………………… 7

*South Cherry St., LLC v. Hennesse Grp. LLC*,
    573 3d 98, 110 (2d Cir. 2009) …………………………………………………………6

*Tacopina v. Kerik*,
    No. 14 CV 749, 2016 WL 1268268, at *6 (S.D.N.Y. Mar. 31, 2016) ……………….....15,16

*T.F.T.F. Cap. Corp. v. Marcus Dairy, Inc.*,
    312 F.3d 90, 93 (2d Cir. 2002) …………………………………………………………9

*Ticketmaster Corp. v. Lidsky*,
    245 A.D.2d 142, 143  (1ˢᵗ Dep't 1997) ………………………………………….…16

*Todd v. Exxon Corp.*,
    275 F.3d 191, 198 (2d Cir. 2001) …………………………………………………...6

*Torres v. Baum*,
    No. 1:10-CV-1385, 2011 WL 2532945, at *6 (N.D.N.Y. June 24, 2011) …………….....19,20

*United Mine Workers of America v. Pennington*,
    381 U.S. 657 (1965) …………………………………………………….……8

iv

*West 48th Holdings LLC v Eliyahu*,
    64 Misc 3d 133[A], 2019 NY Slip Op 51066[U] [App Term, 1st Dep't 2019] ……..…10,11

## **Other**

Administrative Code of City of NY § 28-118.3.1 ……………………………………………..10

Administrative Code of City of NY § 28-118.3.2 …………………………………..……10

Fair Debt Collection Practices Act …………………………………………………………...1

Federal Rule of Civil Procedure 12(b)(6) ………………………………………….....1,6

General Business Law § 349 ………………………………………………..…..1,2, 13

Multiple Dwelling Law § 301 …………………………………………………………4,10

Multiple Dwelling Law § 301(4) ………………………………………………………...12

Multiple Dwelling Law § 301(6) …………………………………………..……12

Multiple Dwelling Law § 302 ………………………………………………………4,10

N.Y. Judiciary Law. § 487 ………………………………………………..…...1,2,15,16

N.Y.C.C. § 645[b][3][e] …………………………………………………………11

## PRELIMINARY STATEMENT

Defendants Sontag & Hyman, P.C. ("S&H") and Marc H. Hyman ("Hyman") (hereinafter, collectively, "S&H" or "Defendants") submit this Memorandum of Law in support of their motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

In this action, Plaintiff is seeking to hold attorneys liable for doing what attorneys do: advocate on behalf of their clients. Perpetual Ashare ("Plaintiff") brought the instant action against the owners and property management company and allegedly related entities (the "Landlord Defendants") of the building where she resides. Plaintiff also seeks to hold Sontag & Hyman, the attorneys who represented East Harlem MEC Parcel C in a nonpayment proceeding against Plaintiff, liable for filing actions and representing their client. In connection with filing various actions in Housing Court and sending various demand letters to collect rent, Plaintiff alleges that Sontag & Hyman (I) violated the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692, *et seq*.); (II) violated New York General Business Law Section 349 ("Gen. Bus. L. § 349"); (III) violated N.Y. Judiciary L. § 487; and (IV) committed negligence and/or gross negligence.

## SUMMARY OF ARGUMENT

As discussed in further detail below, each of Plaintiff's causes of action fails to state a claim upon which relief can be granted.

The *Noerr-Pennington* doctrine precludes Plaintiff's FDCPA claim. The conduct complained of includes protected petitioning and petitioning activity. Moreover, the sham litigation exception is inapplicable here, as there was merit to the action underlying Defendants' lawsuit in Housing Court. Plaintiff's interpretation of an erroneous decision as controlling did not

bar Attorney Defendants from advocating for their clients in a second lawsuit. Put simply, Plaintiff's allegations hinge on a legal conclusion concerning a Certificate of Occupancy.

Plaintiff's claim pursuant to New York's General Business Law § 349, which prohibits deceptive advertising and trade practices, fails to plausibly allege any conduct giving rise to a violation of the statute. Merely alleging "upon information and belief" that S &H filed a large number of lawsuits without meaningful review is not a specific allegation.  Plaintiff asks the Court to merely assume that the allegedly "thousands" of lawsuits filed by S&H were all filed without meaningful review based on their assertion that Plaintiff's building did not have a certificate of occupancy.  Plaintiff's unsupported and conclusory inferences fail to satisfy the plausibly threshold.

Next, Plaintiff fails to satisfy the heightened pleading standard of Judiciary Law § 487. Moreover, the complained-of actions do not involve any fraud on the Court in the course of an on-going litigation.

Lastly, New York law precludes a negligence claim by an opposing party against their adversary's lawyer absent special circumstances not alleged here. Furthermore, Plaintiff's gross negligence is premised upon conclusory assertions of reckless indifference and intentional acts.

## **STATEMENT OF FACTS**[1]

Landlord Defendants (East Harlem Mec Parcel C, L.P., Defendant Metro 125 LLC, Richman Property Services Inc.) own or operate the building in which Plaintiff resides. *See* Complaint, ¶¶ 15-20; 26-30; 39-40. The Subject Building is organized as a condominium pursuant to Article 9-b of the Real Property Law. *See* Complaint, ¶ 17; Condominium Declaration.  Since

---

[1] Defendants state the facts as alleged in the Complaint solely for the purposes of this motion to dismiss but do not admit their accuracy.

2013, East Harlem Mec Parcel C, L.P. has filed at least eight nonpayment proceedings against Plaintiff. *See* Complaint, ¶ 47, n. 4.

Perpetual Ashare ("Plaintiff" or "Ashare") has resided at 2293 3rd Avenue New York, NY 10035 (the "Subject Building") since 2012. Complaint, ¶ 22. On December 1, 2011, 2993 Third Avenue obtained a Final Certificate of Occupancy ("C of O").[2] *See* Complaint, Exhibit "U", pp. 48-49. Pursuant to the Final C of O, the cellar floor was to be used as, *inter alia*, an electric room, gas meter room, tenant storage room, and community room. The use of the first floor was for a retail store and residential lobby. *Id.* The second through eighth floors permitted the use of seven apartments per floor for a total of 49 apartments. *Id.* In October 2013, the New York City Department of Buildings approved plans submitted to change the use of the first floor from a retail space to an eating and drinking establishment. *See Complaint,* Exhibit "U", pp. 50-54. In connection with the addition of an eating and drinking establishment, the New York City Department of Buildings issued various Temporary Certificates of Occupancy. *See* Complaint, Exhibit "U", pp. 55-61. Notably, there was no change to the use of the residential floors (Floors 2 through 8) in the temporary certificates of occupancy. *See id.*

Defendants allegedly mailed Plaintiff a collection letter dated January 18, 2024, seeking the payment of $3,369.76 in rent arrears. Complaint, ¶ 45, n. 3. The letter contains certain required

---

[2] "A Certificate of Occupancy . . . describes the legal occupancy limits, layout, and allowable use of a building New buildings must obtain a CO upon completion of work, and existing buildings must obtain a new or amended CO when there is work that changes the use, egress, or occupancy of an existing building. A Temporary Certificate of Occupancy (TCO) indicates that the property or partial property is safe for occupancy. TCOs typically expire every 90 days, but may be less based on Building Code or Inspection Unit approval. If the outstanding issues for a permanent CO have not been completely resolved prior to the expiration date, the TCO may not be renewed. No one may legally occupy a building until the [NYC] Department [of Buildings] has issued a CO or TCO." Rick D. Chandler, Code Notes: Certificate of Occupancy & Temporary Certificate of Occupancy (May 2017), https://www.nyc.gov/assets/buildings/pdf/code_notes_cofo.pdf

disclosures pursuant to the FDCPA, which Plaintiff concedes does not form a basis of her lawsuit. *Id.*

On March 25, 2024, the Appellate Term of the Supreme Court of New York,[3] First Department ("Appellate Term") issued its decision in a case involving another tenant in the same building entitled *East Harlem Mec Parcel C, L.P. v. Reggie Smalls*, Index No. LT-300884-22/HA. Complaint, ¶ 91.

The Appellate Term's decision was uploaded to the New York State Court Electronic Filing System ("NYSCEF") on April 9, 2024. *See* Complaint, ¶ 91.[4] In that decision, the Appellate Term upheld an order from the Civil Court of the City of New York, New York County dated September 14, 2023, that granted the tenant's motion to dismiss a nonpayment petition. *See E. Harlem MEC Parcel C, L.P. v Smalls*, 82 Misc 3d 127(A) (App T. 1st Dep't 2024).

The Appellate Term found that the that the Subject Building "had undergone a 'type 1' alteration, including the addition of an eating and drinking establishment on the first floor; and that temporary certificates of occupancy issued between 2013 and 2015 had all expired and no new certificate of occupancy had been issued." *See E. Harlem MEC Parcel C, L.P. v Smalls*, 82 Misc 3d 127(A) (App T. 1st Dep't  2024).[5]

In reaching its decision, the Appellate Term relied, *inter alia*, on  Multiple Dwelling Law ("MDL")§§ 301 and 302 as applied in *Chazon, LLC v Maugenest*, 19 NY3d 410, 416 (2012).

---

[3] In New York State, Appellate Term Courts of the Supreme Court are established by the "appellate division of each supreme court in each judicial department" consisting of "not less than three nor more than five justices of the supreme court." *See* N.Y.S. Const, Art. 6, ¶ 8(a).

[4] The Court may also take judicial notice of the fact that an attorney from Manhattan Legal Services appeared on behalf of Defendant Smalls in that action. *See East Harlem Mec Parcel C, L.P. V. Reggie Smalls*, LT-300884-22/HA, Notice of Appearance [NYSCEF Doc. No. 18], Notice of Motion [NYSCEF Doc. No. 19], p. 3, ¶ 1).

[5] While Plaintiff alleges that this decision was "a ruling against Attorney Defendants" (Complaint,  ¶ 88), the Attorney Defendants were not a party to the *Smalls* decision.

On or about April 10, 2024, the S&H Defendants allegedly sent a five-day rent demand to Plaintiff, seeking $3,617.44 in unpaid rent ("Five Day Rent Demand"). Complaint, ¶ 46. Unable to access the payment portal, Plaintiff took the bus to Richman Property services and made a payment of $2,245.10 on or about April 18, 2024.  Id., ¶ 51.

Around the same time, Plaintiff received a letter dated April 11, 2024 ("Thirty Day Demand Letter") for $3,617.44. *Id.*, ¶ 51. On June 11, 2024, Defendants filed a petition against Plaintiff entitled *East Harlem Mec Parcel C v. Perpetual Ashare et. al*, LT-3009890-24/NY (the "Underlying Action") for $1,3814 in rental arrears for April 2024. *Id.*, ¶ 56. Manhattan Legal Services informed Plaintiff that they could represent her on August 9, 2024, and filed an amended answer in the aforementioned case on November 20, 2024. Complaint, ¶ 65. After the parties appeared in Court on December 3, 2024, the proceeding was adjourned on consent until January 13, 2025. Complaint, ¶ 66; Complaint, Exhibit "T".  A Stipulation of Settlement entered that day states "[t]he parties understand that each party has the right to a trial, the right to see a Judge at any time and the right not to enter into a stipulation of settlement. However, after review of all the issues, the parties agree that they do not want to go to trial and instead agree to the following stipulation in settlement of the issues of this matter." Complaint, Exhibit "T".  The handwritten portion of the Stipulation of Settlement states that the "Proceeding [is] adjourned on consent to January 13, 2025, at 9:30 A.M. for all purposes." *Id.*

 On December 10, 2024, counsel for Plaintiff emailed an S&H attorney stating that Plaintiff will file a motion to dismiss if he does not discontinue the case. Complaint, ¶¶ 67-68.

 One week later, Plaintiff filed a motion for summary judgment. Complaint, ¶ 69. On January 13, 2025, the parties agreed to discontinue the proceeding without prejudice. Complaint,

¶ 70. Accordingly, the parties in the Underlying Action entered into a stipulation of discontinuance. *See* Complaint, Exhibit "V".

## **LEGAL STANDARD**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may assert that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim that relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *South Cherry St., LLC v. Hennesse Grp. LLC*, 573 3d 98, 110 (2d Cir. 2009) (holding that courts are to "assume all 'well-pleaded factual allegations' to be true, and 'determin[e] whether they plausibly give rise to an entitlement of relief'") (internal citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *See Bell A. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). These alleged facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679 (internal citations omitted). Further, they must "show" that the pleader is entitled to relief. *Id.*

When considering a Rule 12(b)(6) motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Law Practice Mgmt. Consultants, LLC v. M & A Counselors & Fiduciaries*, *LLC*, 599 F. Supp. 2d 355, 358 (E.D.N.Y. 2009) (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001))(quoting

*Scheur v. Rhodes*, 416 U.S. 232, 236 (1974))). In the Second Circuit, *Twombly* has been interpreted to require a complaint to "'allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion. *Law Practice Mgmt. Consultants, LLC*, 599 F. Supp. 2d at 358 (*quoting Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss*." Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

In adjudicating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "is entitled to consider: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Swiatkowski v. Citibank*, 745 F.Supp.2d 150, 162 (E.D.N.Y. 2010); *see also*, *Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citing *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

A district court "reviewing a motion to dismiss is not required to credit conclusory allegations unsupported by facts . . . or to suspend common sense in conducting its analysis . . . Nor is a district court obliged to reconcile plaintiff's own pleadings that are contradicted by other

matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 Fed. Appx. 533 (2d Cir. 2020) (unpublished) (internal quotations and citations omitted). Moreover, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, 2018 WL 2247206, at *1 (S.D.N.Y. May 16, 2018) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

## I.   THE NOERR-PENNINGTON DOCTRINE BARS PLAINTIFF'S FDCPA CLAIM.

"In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965), the Supreme Court interpreted the Sherman Act, in light of 'First Amendment principles,' to exclude 'concerted petitions for anti-competitive legislation,' including 'concerted actions before courts and administrative agencies.'" *Baptiste-Elmine v. Richland & Falkowski, PLLC*, No. 21-CV-4994, 2025 WL 974346, at *12 (E.D.N.Y. Apr. 1, 2025) (*quoting* Primetime *24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 99–100 (2d Cir. 2000)). Since the decisions in *Noerr* and *Pennington*, "[t]he *Noerr-Pennington* doctrine has been extended from its original anti-trust context to 'all petitioning activity,' including 'concerted efforts incident to litigation such as pre-litigation threat letters and settlement offers.'" *Id.* (*quoting Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017). While pre-litigation demand letters do not fall within the literal meaning of petitions to the government, "they are a preliminary step to resort to litigation if necessary' and 'therefore fall[] within the protection of the Noerr-Pennington doctrine.'" *Singh v.* NYCTL 2009-A Tr., No. 2016

WL 3962009, at *4 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir. 2017) (*quoting*

*Primetime 24 Joint Venture* 219 F.3d at 100).

However, sham-litigation is not protected by the *Noerr-Pennington* doctrine. *Singh*, *683* F.

App'x at 78. Sham litigation "applies only where the litigation is 'objectively baseless in the sense

that no reasonable litigant could realistically expect success on the merits.'" *Id.* (*quoting Prof'l*

*Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993)). In other words, sham

litigation is "litigation that is (1) objectively  baseless and (2) intended to cause harm to the

defendant through the use of governmental process-as opposed to the outcome of that process"

*T.F.T.F. Cap. Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002) (internal quotations

omitted).

Here, the acts alleged in the Complaint alleges two kinds of petitioning activity. Plaintiff

alleges that letters filed as a preliminary step towards litigation violated the FDCPA. (*see e.g.*

Complaint, ¶ 47 (alleging demand letter was recognized by Plaintiff "as the type of collection letter

sent as an immediate  precursor to the filing of a non-payment eviction proceeding"); ¶ 53

(alleging that in reaction to Thirty Day Demand Letter that Plaintiff "wanted to avoid court.");  ¶

56 (alleging Defendants commenced an eviction proceeding for nonpayment). Plaintiff's

remaining allegations relate to the filing of the lawsuit and conduct in court. *See* Complaint, ¶ 56

(alleging Defendants should have known there was no valid certificate of occupancy prior to filing

nonpayment petition); 81 (alleging emotional distress while the case was pending).  Accordingly,

the complained of activity is petitioning activity. *See Singh v. NYCTL 2009-A Tr.*, 683 F. App'x

76 (2d Cir. 2017)

The "sham litigation" exception does not apply to Sontag & Hyman's petitioning activity.

In affirming the Civil Court's Order, the Appellate Term in *Smalls* relied on Multiple Dwelling

Law ("MDL.") §§ 301 and 302 as applied in *Chazon, LLC v Maugenest*, 19 NY3d 410, 416 (2012). MDL § 301 provides that "[n]o multiple dwelling shall be occupied in whole or in part until the issuance of a certificate by the department that said dwelling conforms in all respects to the requirements of this chapter, to the building code and rules and to all other applicable law . . ." with certain exceptions.

The *Smalls* Court determined that "[t]he evidentiary submissions conclusively demonstrate, and it is essentially undisputed, that after the 2011 certificate of occupancy was issued, the subject building had undergone a 'type 1' alteration, including the addition of an eating and drinking establishment on the first floor; and that temporary certificates of occupancy issued between 2013 and 2015 had all expired and no new certificate of occupancy had been issued." *Smalls*, 82 Misc. 3d 127(A), 205 N.Y.S.3d 841 (App. Term, 1st Dep't 2024). Thus, the language of the decision left open the possibility that additional evidence and further disputes regarding the 2011 certificate of occupancy might change the outcome of a subsequent case.

*Smalls* also relied on distinguishable cases where there was no certificate of occupancy. *See E. Harlem MEC Parcel C, L.P. v. Smalls,* 82 Misc. 3d 127(A), 205 N.Y.S.3d 841 (N.Y. App. Term, 2024) (*citing Ormonde Equities LLC v Jacoby*, 81 Misc 3d 137[A], 2023 NY Slip Op 51416[U] [App Term, 1st Dept 2023]; *West 48th Holdings LLC v Eliyahu*, 64 Misc 3d 133[A], 2019 NY Slip Op 51066[U] [App Term, 1st Dep't 2019]). In *Ormonde Equities*, "the City of New York, by its  the Office of Administrative Trials and Hearings, affirmed a finding that the 'altered changed building [is] occupied without a valid certificate of occupancy,' in violation of Administrative Code of City of NY §§ 28-118.3.1 and 28-118.3.2." *Ormonde Equities LLC v Jacoby*, 81 Misc 3d 137[A], 2023 NY Slip Op 51416[U] [App Term, 1st Dep't 2023];

Similarly, in *West 48th Holdings,* "the Department of Buildings issued a violation for 'altered/changed building occupied w/o valid certificate of occupancy." In particular, the Court noted "landlord's subdivision of two apartments into four units constitute substantial alterations which require the building to have a certificate of occupancy." Thus, both decisions relied on in *Smalls* were inapplicable to 2293 3rd Avenue, as there was a final certificate of occupancy issued. *See* Complaint, Exhibit "U", p. 48.

Furthermore, Sontag & Hyman could have advanced new theories. Pursuant to Section 645 of the New York City Charter, "'every certificate of occupancy shall, unless and until set aside, vacated or modified by the board of standards and appeals or a court of competent jurisdiction, be and remain binding and conclusive upon all agencies and officers of the city" until an "application of the agency, department, commission, officer or member thereof seeking to make or issue such order. . . .'" *Arcamone-Makinano v. New York City Dep't of Bldgs.*, 2013 WL 1459255 (Sup. Ct. Queens County 2013) (quoting N.Y.C.C. § 645[b][3][e]).[6] Plaintiff has not alleged the Department took any action to revoke the final certificate of occupancy. Rather, Plaintiff merely uses the decision in *Smalls* to argue that a new certificate of occupancy was required for the entire building.

---

[6] Section 645[b][3][e] of the New York City Charter states, "every certificate of occupancy shall, unless and until set aside, vacated or modified by the board of standards and appeals or a court of competent jurisdiction, be and remain binding and conclusive upon all agencies and officers of the city, and shall be binding and conclusive upon the department of labor of the state of New York, as to all matters therein set forth, and no order, direction or requirement affecting or at variance with any matter set forth in any certificate of occupancy shall be made or issued by any agency or officer of the city, or by the department of labor of the state of New York, or any commission, board, officer or member thereof, unless and until the certificate is set aside, vacated or modified by the board of standards and appeals or a court of competent jurisdiction *upon the application of the agency, department, commission, officer or member thereof* seeking to make or issue such order, direction or requirement. *All such applications shall be made in writing* and filed with the board or court for hearing thereon; and copies of the application and order, direction or requirement sought to be made or issued shall be served upon the owner of the building or structure and upon the commissioner of buildings, if he is not the applicant, and upon such terms and conditions as to service, notice, time and place of hearing as the board or court shall direct." (emphasis added).

Multiple Dwelling Law § 301(6) provides that "[n]otwithstanding any general or local law to the contrary, a certificate issued for any multiple dwelling organized pursuant to the provisions of article nine-B of the real property law, shall be deemed issued for each dwelling unit contained within such multiple dwelling in full compliance with the requirements of this section." Pursuant to the Condominium Declaration, the building is registered as a condominium pursuant to article nine-B. *See* Condominium Declaration, p. 4. Accordingly, a new certificate of occupancy for each dwelling unit would not be required pursuant to New York City Charter law.

Moreover, Defendants had a valid basis to assert that the *Smalls* decision was wrongly decided, as it completely overlooked the language of Multiple Dwelling Law § 301(4), which states in part that  "the head of the department may, on the request of the owner or his certified agent, issue a temporary certificate of compliance or occupancy for a multiple dwelling *or a section or a part thereof* for a period of ninety days or less." (emphasis added).

In light of the multiple arguments Sontag & Hyman could have expected to succeed on in the Underlying Action against Plaintiff, their decision to represent their clients was not "objectively baseless." The fact that the Underlying Action against Plaintiff was discontinued without prejudice does not plausibly allege that the Defendants did not reasonably expect to succeed on the merits.  *See Eliya, Inc. v. Steven Madden, Ltd*. , No. 15 CV 1272, 2019 WL 5694315, at *6 (E.D.N.Y. Aug. 5, 2019), *report and recommendation adopted*, No. 15 CV 1272, 2019 WL 4593451 (E.D.N.Y. Sept. 23, 2019) ("A settlement does not establish the validity or invalidity of a claim.").

12

II.    **PLAINTIFF'S SECOND CLAIM – SEEKING RECOVERY PURSUANT TO N.Y. GEN. BUS. L. § 349 - MUST ALSO BE DISMISSED BECAUSE IT FAILS TO ALLEGE A DECEPTIVE, CONSUMER-ORIENTED PRACTICE.**

General Business Law § 349 "prohibits 'deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York].'" *Collazo v. Netherland Prop. Assets LLC,* 35 N.Y.3d 987, 990 (2020) (*quoting* GBL §349[a]).

To state a claim under GBL § 349, "a plaintiff must allege that (i) the defendant engaged in consumer oriented conduct, (ii) the defendant's conduct was materially misleading, and (iii) the plaintiff was injured as a result of the defendant's conduct." *Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273, 2020 WL 5848616, at *5 (E.D.N.Y. Sept. 30, 2020).

"The 'critical question' in determining whether a defendant engaged in 'consumer-oriented conduct' is 'whether the matter affects the public interest in New York, not whether the suit is brought by a consumer.'"*Id.* (*quoting Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). Conduct that is private in nature or based on a single transaction is insufficient to state a claim under GBL § 349. Some "courts have dismissed GBL claims brought by tenants on the basis that the underlying conduct amounts to nothing more than a private transaction." *Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, No. 1:17-CV-04525-GHW, 2018 WL 2247206, at *8 (S.D.N.Y. May 16, 2018) (collecting cases). Allegations "regarding the number of eviction actions filed by a law firm, without more, does not enable a court to draw the reasonable inference that defendants are engaged in a pattern of misconduct involving other tenants." *Finch v. Slochowsky & Slochowsky, LLP, No. 19-CV-6273, 2020 WL 5848616, at *6 (E.D.N.Y. Sept. 30, 2020)* ; *see also, e.g,   Remler v. Cona Elder L., PLLC*, No. 21CV5176, 2022 WL 4586243, at *8 (E.D.N.Y. Sept. 29, 2022) ( dismissing GBL § 349 claim where  on  plaintiff's allegation  that  defendants  filed  lawsuits  without  factual  basis  insufficient  to  raise  upon  a

13

speculative level of a pattern of misconduct); *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 111 (E.D.N.Y. 2020) (dismissing GBL § 349 claim where "plaintiff merely allege[d] that defendants have engaged in 'a pattern and practice of misrepresenting the fact and amount of rental arrears to tenants and to courts'").

Here, Plaintiff's allegations do not establish either consumer-oriented or deceptive conduct. Rather, they establish little more than private disputes between Plaintiff and her landlord relating to her failure to pay her rent. *See Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, No. 1:17-CV-04525, 2018 WL 2247206, at *8 (S.D.N.Y. May 16, 2018) (collecting cases). Nor is there anything deceptive in the letters sent or the actions commenced. Plaintiff's landlord claimed that Plaintiff had not paid her rent (which she had not), and S&H advocated for the landlord, which sought to enforce its contractual right to collect the rent.

Similar to the plaintiffs in *Finch*, *Remler*, and *Brake*, Plaintiff's Complaint fails to present sufficient facts to plausibly allege that the filing of lawsuits constituted a pattern of misconduct or otherwise violated GBL § 349. Plaintiff alleges that "[t]he systemic deceptive collection practices of Landlord Defendants and Attorney Defendants have, upon information and belief, affected dozens of similarly-situated consumers living in the Subject Building." In support of this allegation, Plaintiff alleges that the S&H Defendants "filed approximately one thousand nonpayment eviction cases in local Housing Court" in 2024. *Id.*, ¶ 102. As the Court in *Finch* held, however, the mere number of cases filed by an attorney does not plausibly allege "consumer-oriented" conduct. Moreover, Plaintiff's allegations about the subject building are entirely distinct from the other buildings, which Plaintiff makes no allegations apart from the number of lawsuits filed.

14

III.  **PLAINTIFF'S THIRD CLAIM - ALLEGING A VIOLATION OF JUDICIARY LAW § 487 - MUST ALSO BE DISMISSED, AS IT FAILS TO ALLEGE FACTS, WITH THE REQUISITE PARTICULARITY, ESTABLISHING A VIOLATION OF THE STATUTE**

In order to state a claim for a violation of Judiciary Law § 487, a "[p]laintiff must allege his [or her] claim with particularity and 'must show, at a bare minimum, that defendants: (1) are guilty of deceit or collusion, or consent to any deceit or collusion; and (2) had an intent to deceive the court or any party." *Bottone v. Roche*, 2024 WL 869552, at *6 (S.D.N.Y. Feb. 28, 2024) *(quoting Ray v. Watnick*, 182 F. Supp. 3d 23, 28 (S.D.N.Y. 2016)).

Moreover, a Judiciary Law § 487 claim is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b). *See, e.g., Shad v. Zachter PLLC*, 2024 WL 2020794, at *6 (S.D.N.Y. Mar. 7, 2024), *report and recommendation adopted*, 2024 WL 1955448 (S.D.N.Y. May 3, 2024); *Bryant v. Silverman*, 284 F. Supp. 3d 458, 469 (S.D.N.Y. 2018) (applying Rule 9(b) to plaintiff's Judiciary Law § 487 claims); *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 116 (E.D.N.Y. 2020) (citing *Jean v. Chinitz*,  163 A.D.3d 497 (1st Dep't 2018)); *Remler v. Cona Elder L*., PLLC, No.  2022 WL 4586243, at *6 (E.D.N.Y. Sept. 29, 2022).

Plaintiff's allegations fall outside the scope of Judiciary Law § 487. Plaintiff alleges that S & H violated Judiciary Law § 487 by, inter alia, "filing a court action to recover a debt from Ms. Ashare despite clear evidence that Ms. Ashare did not owe a putative debt." Complaint, ¶ 127. However, it is well-settled that an "'[a]ssertion of unfounded allegations in a pleading, even if made for improper purposes, does not provide a basis for liability' under Section 487." *Tacopina v. Kerik*, No. 14 CV 749, 2016 WL 1268268, at *6 (S.D.N.Y. Mar. 31, 2016)  (Swain, D.J.) (quoting  *Ticketmaster Corp. v. Lidsky*, 245 A.D.2d 142, 143  (1st Dep't 1997)); *see also Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 180  (2020) ("The statute does not encompass the filing

of a pleading or brief containing nonmeritorious legal arguments, as such statements cannot support a claim under the statute."

Courts have been careful to point out that Judiciary Law § 487 "was not designed to curtail attorneys' expressions of views concerning what the law is or should be, nor does it include merely poor lawyering, negligent legal research or the giving of questionable legal advice." *See Delaney v. HC2, Inc.*, 761 F. Supp.3d 641, 663 (S.D.N.Y. 2025) (quoting *Bill Birds*, 35 N.Y.3d at 173). This is "in keeping with the partly criminal nature of the statute, which requires a court to ensure 'that penal responsibility is not extended beyond the fair scope of the statutory mandate.'" *See id.* (quoting *Bill Birds*, 35 N.Y.3d at 173).

Moreover, Plaintiff's assertions regarding the number of lawsuits in Housing Courts are insufficient to establish "a pattern of egregious behavior." *Remler v. Cona Elder L., PLLC*, No. 21 CV 5176, 2022 WL 4586243, at *7 (E.D.N.Y. Sept. 29, 2022) (dismissing Judiciary Law § 487 cause of action  where plaintiff alleged that defendant filed approximately 490 lawsuits on behalf of nursing homes and "failed to conduct a meaningful review of the validity of those claims").

To the extent Plaintiff's other allegations relate to conduct occurring before litigation, such as sending pre-litigation notices and demand letters, such allegations do not give rise to a Judiciary Law § 487 claim, which is limited to conduct occurring during litigation. *See, e.g.*, *Bill Birds*, 35 N.Y.3d at 179-180.

**IV.    PLAINTIFF'S FOURTH CLAIM - FOR NEGLIGENCE AND GROSS NEGLIGENCE - MUST ALSO BE DISMISSED, AS (A) S & H DID NOT OWE PLAINTIFF A DUTY, (B) PLAINTIFF ALLEGES INTENTIONAL CONDUCT, NOT NEGLIGENT CONDUCT, BY S & H, AND (C) PLAINTIFF DOES NOT ALLEGE FACTS DEMONSTRATING RECKLESS INDIFFERENCE**

In her final cause of action, Plaintiff asserts a claim of negligence and/or gross negligence against all Defendants. Complaint, ¶¶ 135-139.  Whether viewed as a negligence claim or gross negligence claim, this claim fails as well.

To state a cause of action for negligence under New York Law, a plaintiff must allege that (a) a defendant owed him or her a duty of care; (b) the defendant breached that duty; (c) the breach of said duty proximately damaged plaintiff. *See Goneyv. SuttonPark LLC, No. 20 CIV. 5387 (AKH), 2025 WL 486705, at *1 (S.D.N.Y. Feb. 12, 2025)* (citing  *Pasternack v. Laboratory Corp. of America Holdings, 59 N.E.2d 485, 490 (2016)*). Under New York law, in order to allege gross negligence, a plaintiff must allege the aforementioned elements of negligence "that the defendant's conduct evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing.'" *Remler v. Cona Elder L., PLLC*, No. 21 CV 5176, 2022 WL 4586243, at *8 (E.D.N.Y. Sept. 29, 2022) (quoting  *Am. Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 556 (2nd Cir. 1996); *see also Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 61 (2d Cir. 2012) ("On a motion to dismiss, a claim for gross negligence will be sustained only if the plaintiff alleges facts plausibly suggesting that the defendant's conduct 'evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.'") (quoting *M+J Savitt, Inc. v. Savitt*, 2009 WL 691278, at *12 (S.D.N.Y. Mar. 17, 2009)). In the context of gross negligence claims, recklessness "means 'an extreme departure from the standards of ordinary care,' such that 'the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Bayerische Landesbank, New York Branch v. Aladdin*

*Cap. Mgmt. LLC*, 692 F.3d 42, 62 (2d Cir. 2012) (*quoting AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 454 (2d Cir.2009)*).

### A.   S & H did not owe Plaintiff a duty.

It is well-settled that attorneys in New York are not liable to third-parties for professional negligence except in certain circumstances which are not alleged here. *See  Delaney,* 761 F. Supp. 3d at 674 (collecting cases); *see also Nelson v. Kalathara*, 48 A.D.3d 528 (2d Dept. 2008); *Michalic v. Klat,* 128 A.D.2d 505, 506 (2d Dep't 1987) ("the lack of privity between the plaintiffs and the defendant attorneys presents a fatal defect in the plaintiffs' pleadings, since New York law does not recognize any liability on the part of an attorney to a nonclient third party"); *Doo v. Berger*, 227 A.D.2d 435, 436, 642 N.Y.S.2d 694 (2d Dep't 1996) ("The law in New York does not recognize any liability on the part of an attorney to a non-client third party for injuries sustained as a result of an attorney's actions in representing his client absent fraud, collusion, or a malicious or tortious act."). Because S & H did not owe a duty to Plaintiff and there are no allegations of special circumstances, the negligence and gross negligence causes of action must be dismissed.

### B.   Because Plaintiff's allegations of filing lawsuits and sending demand letters are intentional actions, Plaintiff fails to state a claim for negligence or gross negligence.

"Under New York law, 'intentional conduct ... cannot form the basis of a claim founded on negligence.'" *Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.,* 751 F. Supp. 3d 195, 205 (E.D.N.Y. 2024) (*quoting Morrow v. MetLife Invs. Ins. Co.*, 177 A.D.3d 1288 (App. Div. 4th Dep't 2019).

In *Onfroy*, the Court dismissed the plaintiff's abuse allegation "predicated on the filing of a second lawsuit, which requires intentional action by definition." *Onfroy v. L. Offs. of Geoffrey T. Mott*, P.C., 751 F. Supp. 3d 195, 205 (E.D.N.Y. 2024). Here, Plaintiff's allegations consist of sending and writing demand letters addressed to Plaintiff and filing lawsuits. Accordingly,

Plaintiff's actions involve intentional conduct that can not form the basis of causes of action for negligence or gross negligence. *See Onfroy v. L. Offs. of Geoffrey T. Mott, P.C. ,* 751 F. Supp. 3d 195, 205 (E.D.N.Y. 2024);  *Eze v. City Univ. of New York at Brooklyn Coll.*, No. 11-CV-2454, 2011 WL 6780652, at *6 (E.D.N.Y. Dec. 27, 2011)  (dismissing negligence cause of action where facts pleaded were only consistent with intentional or reckless conduct).

### C.  Plaintiff has not plausibly alleged that Attorney Defendants acted with reckless indifference.

The instant complaint is devoid of facts alleging gross negligence. Plaintiff alleges in a conclusory fashion that "Defendants' actions evince a reckless disregard for the rights of others and smack of intentional wrongdoing. Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general."  Complaint, ¶ 138. Courts have rejected similar conclusory allegations. *See e.g. Remler v. Cona Elder L., PLLC*, No. 21 CV 5176, 2022 WL 4586243, at *8 (E.D.N.Y. Sept. 29, 2022) (finding plaintiff to "specifically plead any of the required elements for a claim of gross negligence" where the complaint merely "recites the definition of gross negligence, generally alleging that the defendants' actions 'evince a reckless disregard' for her rights with a 'high degree of moral culpability and willful or wanton negligence or recklessness.'"); *Torres v. Baum*, No. 1:10-CV-1385, 2011 WL 2532945, at *6 (N.D.N.Y. June 24, 2011) (finding plaintiff's "gross negligence allegations. . .  succumbed to the fatalistic practice of pleading nothing greater than the conclusory elements of the cause of action").  As Plaintiff does not state which conduct gives rise to her claim for gross negligence. Rather, Plaintiff has merely recited conclusory language of gross negligence. *See* Complaint, ¶ 128.

In *Torres v. Baum*, the plaintiff attempted to salvage their gross negligence claim by asserting the defendant should have corrected or withdrawn their pleading in the underlying action when they became aware their calculation were in error during the litigation of the underlying

action. *Torres v. Baum*, No. 1:10-CV-1385, 2011 WL 2532945, at *6 (N.D.N.Y. June 24, 2011). The Court stated it "could not find any precedent, nor way any provided, touting a legal duty that compels a litigant to either amend or withdraw a complaint solely upon receiving information that may challenge the viability of its claim." *Id.* Accordingly, the Court rejected the plaintiff's proposed amended gross negligence cause of action as futile. *Id.* To the extent that Plaintiff's gross negligence claim is premised on failing to withdraw the Underlying Action or wrongly filing the Underlying Action, such actions do not constitute gross negligence.

## **CONCLUSION**

For the reasons stated above, Defendants respectfully request the Court dismiss all claims stated in Plaintiff's Complaint and grant all other relief the Court deems proper.

Dated: September 3, 2025
       New York, New York

                                    Respectfully Submitted,

                                    MARSHALL DENNEHEY, P.C.

                        By: _____
                                    Matthew K. Flanagan
                                    Michael G. Jacobson
                                    ***Attorney for Defendants***
                                    ***Sontag & Hyman, P.C. and Marc H.***
                                    ***Hyman***
                                    Wall Street Plaza, 88 Pine Street, 29th Floor
                                    New York, New York 10005
                                    Telephone: (212) 376-6400
                                    Fax: (212) 376-6490

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Local Rule 7.1 that the foregoing Memorandum of Law accompanying this Motion to Dismiss, filed on September 3, 2025, contains 6,855 words, exclusive of the caption, table of contents, table of authorities, and signature block. In determining the total word count of the foregoing document, I relied on the word count provided by Microsoft Word, the word-processing system used to prepare the document.

Dated:  September 3, 2025
          New York, New York

Respectfully Submitted,

MARSHALL DENNEHEY, P.C.

By: _____
      Matthew K. Flanagan
      Michael G. Jacobson
      ***Attorney for Defendants***
      ***Sontag & Hyman, P.C. and Marc H.***
      ***Hyman***
      Wall Street Plaza, 88 Pine Street, 29th Floor
      New York, New York 10005
      Telephone: (212) 376-6400
      Fax: (212) 376-6490

21