UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
PERPETUAL ASHARE

                        Plaintiff,

       -against-

SONTAG & HYMAN, P.C.,
MARC H. HYMAN,
EAST HARLEM MEC PARCEL C L.P.,
EAST HARLEM MEC PARCEL C HOUSING
FUND DEVELOPMENT CORPORATION,
METRO 125, INC and
RICHMAN PROPERTY SERVICES, INC.

                       Defendants.
---------------------------------------------------------------x

Civil Action No. 1:25-cv-02834-GHW-KHP

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO ATTORNEY DEFENDANTS' MOTION TO DISMISS**

## Contents

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT .................................................................................................................. 4

   I.    MDL § 302 and the binding effect of *Smalls* ............................................................. 5

      a.   Plaintiff has sufficiently alleged that the MDL § 302 rent bar applies to 2293 3rd Avenue and prohibits the collection of rent in such building. ........................................... 5

      b.   *Smalls* was binding precedent which precluded the Defendants from filing the Lawsuit against Ms. Ashare. ........................................................................................ 6

   II.   Noerr-Pennington ................................................................................................. 9

      a.   The Noerr-Pennington doctrine does not apply because Attorney Defendants' disregard for binding Appellate Term and Court of Appeals precedent was objectively baseless. ............. 9

   III.   GBL § 349 ......................................................................................................... 13

      a.   There is no basis to categorically exclude tenants from the protections of GBL § 349. ..... 17

      b.   Defendants' misconduct here is no different than any other debt collection activity that gives rise to GBL § 349 liability. ......................................................................... 18

   IV.   Judiciary Law § 487 ........................................................................................... 19

      a.   Attorney Defendants' misrepresentations are covered by Judiciary Law § 487. ............. 19

      b.   Plaintiff has pleaded sufficient allegations to sustain a claim under Judiciary Law § 487. 20

   V.   Negligence and gross negligence ............................................................................ 22

      a.   Duty for negligence and gross negligence claims .................................................... 22

      b.   Intent for gross negligence claims. ..................................................................... 23

      c.   Reckless indifference ...................................................................................... 24

   CONCLUSION ................................................................................................... 25

## Cases

*Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 903 N.E.2d 265, 874 N.Y.S.2d 868 (N.Y. 2009) ........................ 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................. 5, 6

*Baptiste-Elmine v. Richland & Falkowski*, PLLC, No. 21-CV-4994 (RPK) (PK), 2025 WL 974346 (E.D.N.Y. Apr. 1, 2025) ........................................................................................................... 7, 11

*Bill Birds, Inc. v. Stein Law Firm, P.C.*, 35 N.Y.3d 173 (N.Y. 2020) ...................................... 19, 20

*Brake v. Slochowsky & Slochowsky, LLP*, 504 F.Supp.3d 103 (E.D.N.Y. 2020) .......................... 16

*Calif. Motor Transp. v. Trucking Unltd.*, 404 U.S. 508, 513, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) ......... 11

*Cameron v. LR Credit 22, LLC*, 998 F.Supp.2d 293 (S.D.N.Y. 2014) ........................................ 10

*Campbell v. City of Elmira*, 84 N.Y.2d 505, 644 N.E.2d 993 (1994) .......................................... 24

*Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568 (E.D.N.Y. 2015) .................................. 14, 19

*Chazon, LLC v. Maugenest*, 19 N.Y.3d 410, 971 N.E.2d 852, 948 N.Y.S.2d 571, 2012 N.Y. Slip Op. 04373 (2012) ............................................................................................ 1, 6, 12, 17

*Collazo v. Netherland Prop. Assets LLC*, 35 N.Y.3d 987, 149 N.E.3d 30 (2020) .......................... 18

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 611 N.E.2d 282 (1993) ...... 23, 24, 25

*Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 114 F.Supp.3d 1342 (N.D.Ga. 2015) ............................................................................................................. 11

*Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO), 2025 WL 871637, at *9 (S.D.N.Y. Mar. 20, 2025) ................................................................................................ 23

*Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 ERK, 2012 WL 661456 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) ............................................................................................... 21

*Dimovski v. Tolisano & Danforth, L.L.C.*, No. 3:10-CV-205 JCH, 2011 WL 1638051 (D. Conn. Apr. 29, 2011) ................................................................................................................. 21

*Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, 2018 WL 2247206 (S.D.N.Y. 2018) ....... 16

*E. Harlem MEC Parcel C, L.P. v. Smalls*, 82 Misc. 3d 127(A), 205 N.Y.S.3d 841 (N.Y. App. Term. 2024) ............................................................................................................... passim

*Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886 (3rd Dept. 2008) .......................... 14

*Evans v. Ottimo*, 469 F.3d 278 (2d Cir. 2006) ................................................................................. 9

*Fritz v. Resurgent Capital Services L.P.*, 955 F.Supp.2d 163 (E.D.N.Y. 2013) .................... 10, 13

*Gold v. Shapiro, Dicaro & Barak, LLC*, 2019 WL 4752093 (S.D.N.Y. 2019) .......................... 11

*Guzman v. Mel S. Harris & Assocs., LLC*, No. 16 CIV. 3499 (GBD), 2018 WL 1665252 (S.D.N.Y. Mar. 22, 2018) ................................................................................................................ 21

*Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606 (6th Cir. 2009) ...................................... 10, 13

*Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013) ........................................................................................................... 22

*Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) .......................... 10, 11

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, et al.*, 559 U.S. 573, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) ....................................................................................................... 11

*Juniper Walk Condominium v Patriot Management Corp.*, 774 N.Y.S.2d 672, 3 Misc. 3d 748, (City Ct., White Plains, Mar. 26, 2004) ............................................................................................. 7

*Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 448 N.E.2d 413 (1983) .................... 24

*Karlin v. IVF America, Inc.*, 93 N.Y.2d 282 (1999) ....................................................................... 13

*Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449 (1985) ........................................................................ 9

*Landmarks Holding Corp. v. Bermant,* 664 F.2d 891 (2d Cir.1981) ........................................... 11

*Looff v. Lawton,* 97 N.Y. 478 (1884) ............................................................................................ 20

*Lozano v. Grunberg,* 195 A.D.2d 308 (App. Div. 1st Dept. 1993)................................... 17, 19

*Malta v. Brown,* 819 N.Y.S.2d 210, 12 Misc. 3d 1164(A) (N.Y.C. Civ. Ct., May 31, 2006) ..................... 7

*Marresev American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). ................... 9

*McCrobie v. Palisades Acquisition XVI, LLC,* 359 F. Supp. 3d 239 (W.D.N.Y. 2019) ..................... 14, 18

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2,* 419 F. Supp. 3d 668 (S.D.N.Y. 2019) ................... 10

*Myerson v. Prime Realty Services, LLC,* 7 Misc.3d 911, 921 (Sup. Ct. NY Co. 2005)............................. 17

*Onfroy v. The Law Offices of Geoffrey T. Mott, P.C.,* 751 F.Supp.4th 195 (E.D.N.Y. 2024) ................... 24

*Ormonde Equities LLC v. Jacoby,* 81 Misc.3d 137(A), 200 N.Y.S.3d 290 (N.Y. App. Term 2023)......... 12

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 647 N.E.2d 741 (1995)......................................................................................................... 7, 13, 14

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d. 611 (1993)................................................................................................. 11

*Regel v. Campbell Soup Co.*, 2025 WL 2733840 (S.D.N.Y. 2025) ............................................. 9

*Remler v. Cona Elder Law, PLLC*, No. 21-CV-5176(ARR)(LB), 2022 WL 4586243 (E.D.N.Y. Sept. 29, 2022) ...................................................................................................... 15

*Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116 (E.D.N.Y. June 7, 2011) ........................................................................................................ 14, 18

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996) .................................................................. 6

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP,* 163 F. Supp. 3d 109 (S.D.N.Y. 2016)................................................................................... 15

*Sanchez v. Ehrlich,* No. 16-cv-8677 (LAP), 2018 WL 2084147 (S.D.N.Y. Mar. 29, 2018).... 16, 19, 23, 25

*Shetiwy v. Midland Credit Management*, 980 F.Supp.2d 461 (S.D.N.Y. 2013) ......................... 10

*Singh v. NYCTL 2009-A Trust*, 683 Fed.Appx. 76 (2d Cir. 2017) ............................................. 11

*Small v. Lorillard Tobacco Co.*, Inc. 94 N.Y.2d 43 (1999) ......................................................... 18

*Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 593 N.E.2d 1365 (1992)............................... 23, 24

*Sykes v. Mel Harris and Assocs., LLC,* 757 F.Supp.2d 413 (S.D.N.Y. 2010) ........................... 11

*Toohey v. Portfolio Recovery Assocs., LLC,* 2016 WL 4473016 (S.D.N.Y. 2016) ................... 10

*Torres v. Gutman, Mintz, Baker & Sonnenfeldt P.C.,* No. 17-cv-4109 (KAM) (CLP), 2018 WL 1545687 (E.D.N.Y. Mar. 29, 2018) .................................................................. 16

*United Nat. Ins. Co. v. Tunnel, Inc.,* 988 F.2d 351 (2d Cir. 1993)........................................... 24

*West 48th Holdings LLC v. Eliyahu,* 64 Misc.3d 133(A), 116 N.Y.S.3d 843 (N.Y. App. Term 2019)....... 12

## Statutes

15 U.S.C. § 1692 *et seq.*...........................................................................................................passim

Gen. Bus. L. § 349 ....................................................................................................................passim

Judiciary Law § 487.................................................................................... 22, 23, 24, 26

Multiple Dwelling Law § 301........................................................................................................ 8

Multiple Dwelling Law § 302.....................................................................................................passim

NY City Civ. Ct. Act § 1701 ........................................................................................................ 8

NYC Admin. Code §§ 28-118.3.1-2 ............................................................................................ 9

**PRELIMINARY STATEMENT**

Among the many New York laws protecting apartment dwellers and governing building owners' conduct is the requirement for all buildings to have a valid and up-to-date Certificate of Occupancy. Landlord Defendants have failed to obtain a new Certificate of Occupancy for the building since 2015, after rehabilitation they sought and authorized rendered their original Certificate of Occupancy invalid. Certificates of Occupancy are so central to New York City's regulatory oversight of building habitability that a landlord who fails to obtain one is specifically, immediately and completely barred from collecting any rent for that building through any means, including by commencing a summary proceeding, under Multiple Dwelling Law § 302 and the binding interpretation thereof by the New York Court of Appeals in *Chazon, LLC v. Maugenest*, 19 N.Y.3d 410, 971 N.E.2d 852, 948 N.Y.S.2d 571, 2012 N.Y. Slip Op. 04373 (2012).

Thus, for nearly ten years, Defendants have been barred from taking any actions to collect rent. However, in shameless contempt of this statutory bar to rent collection, over the past decade Defendants have continued to relentlessly and illegally hound Ms. Ashare and the other building tenants for rent.

The Attorney Defendants are central to this deceptive scheme. They are the ones who wrote and sent letters demanding payment on threat of a nonpayment and eviction proceeding. They are the ones who then brought and vigorously litigated the nonpayment proceedings even after receiving notice of a binding appellate decision which applied the MDL § 302 rent bar under *Chazon*. They are the ones who violated the FDCPA, GBL § 349, Judiciary Law, and committed negligence per se and gross negligence. Therefore, their Motion to Dismiss must be denied in full.

1

## STATEMENT OF FACTS

Plaintiff Perpetual Ashare is a single working mother, supporting her two children in the rent-stabilized apartment they have called home since 2012. Complaint ¶¶ 22-23. Defendants East Harlem Mec Parcel C L.P. ("LP"), East Harlem MEC Parcel C Housing Development Fund Corporation ("HDFC"), Richman Property Services ("Richman"), and Metro 125, Inc. ("Metro 125") (collectively "Landlord Defendants"), collectively own and manage the building at 2293 3rd Ave., New York, New York 10035 where Ms. Ashare resides (the Subject Building). *Id.* ¶¶ 25-40.

The Subject Building has lacked a valid Certificate of Occupancy for ten years, since June 4, 2015, when the last temporary Certificate of Occupancy expired. *Id.* ¶ 41. No new Certificate of Occupancy has since been issued. *Id.* Landlord Defendants failed to obtain a new Certificate of Occupancy for the building in 2015 after a rehabilitation that rendered their original Certificate of Occupancy invalid. *Id.* ¶ 41. Certificates of Occupancy are so central to New York City's regulatory oversight of building habitability that a landlord who fails to obtain one is specifically, immediately and completely barred from collecting any rent for that building through any means, including by commencing a summary proceeding. *Id.* ¶¶ 42-43. To date, Landlord Defendants have still not obtained a new Certificate of Occupancy for the building. Thus, for ten years, they have been barred from taking any actions to collect rent. However, in shameless contempt of this statutory bar to rent collection, over the past decade Landlord Defendants have continued to relentlessly and illegally hound tenants in the Subject Building, including Ms. Ashare, for rent. *Id.* ¶¶ 45-70, 82-110. Specifically, Landlord Defendants have unlawfully collected a decade of rental payments from Ms. Ashare. *Id.* ¶¶ 71, 76.

Since the expiration of the Certificate of Occupancy in 2015, prohibiting the collection of rent, the Landlord Defendants filed 127 nonpayment proceedings against tenants in the Subject

Building, including six against Ms. Ashare. *Id*. ¶¶ 105, 106. Defendant Sontag & Hyman ("S&H") represented Landlord Defendants in 82 of such cases. *Id*. ¶ 108. Of the 127 nonpayment actions, judgments were rendered in 45 actions, 24 of which were obtained by Defendant S&H. *Id*. ¶¶ 108, 109. In this time period, Defendants have also pressured Ms. Ashare into making numerous rental payments they could not lawfully collect; Attorney Defendants specifically have induced Ms. Ashare to make additional rental payments via multiple letters, specifically the Five Day Rent Demand of April 10, 2024, and the Thirty Day Rent Demand of April 11, 2024; each letter threatened an eviction suit and induced Ms. Ashare to make a separate payment—payments which, on the face of Attorney Defendants' own (unlawful) complaint, reduced Ms. Ashare's putative balance to a single month's rent.

On or about June 11, 2024, S&H, under the signature of attorney and senior partner Marc H. Hyman ("Hyman") (collectively "Attorney Defendants") on behalf of Landlord Defendants, commenced a nonpayment eviction proceeding against Ms. Ashare seeking possession of her apartment and $1,381.34 in rent arrears—a single month of rent—that were statutorily uncollectable. *Id*. ¶ 56. At the time, the Attorney Defendants knew or should have known there was no legal basis for the proceeding. In fact, in March 2024, Attorney Defendants were specifically informed by the New York State Appellate Term in a collection lawsuit against another tenant of the same building that their clients, the Landlord Defendants, were barred from collecting rent due to the fact that the subject building lacked a valid Certificate of Occupancy. *Id*. ¶¶ 43, 88; *E. Harlem MEC Parcel C, L.P. v. Smalls*, 82 Misc. 3d 127(A), 205 N.Y.S.3d 841 (N.Y. App. Term. 2024). Nevertheless, Attorney Defendants duped and pressured Ms. Ashare into making multiple rent payments that were statutorily uncollectable before she obtained counsel. *Id*. ¶¶ 45-55. Attorney Defendants then refused to discontinue the eviction lawsuit even

after Ms. Ashare's counsel notified them, repeatedly and in writing, that the rent was statutorily uncollectable. *Id.* ¶¶ 65-69.

Defendants' statutorily prohibited collection efforts caused Ms. Ashare incredible stress, fear, anguish, and exhaustion. *Id.* ¶¶ 72-75, 77-81. Defendants denied Ms. Ashare protections guaranteed by a statutory scheme specifically intended to shield her from any and all rental collection efforts until her landlord obtained a valid Certificate of Occupancy for the building. Instead, Ms. Ashare suffered for months under the specter of eviction and homelessness. Ms. Ashare lost hours of sleep to the paralyzing fear of displacement, agonizing over her children's future should they lose their home. *Id.* ¶ 77. Prior to the filing of the (statutorily barred) eviction case on June 10, pressured by Defendants' nearly identical April 10 and April 11 threats of a nonpayment eviction case, Ms. Ashare drained her checking account nearly to the point of overdraw to make several rental payments she did not owe, which left her teetering on the brink of food insecurity. *Id.* ¶¶ 51-54, 76. These two written demands for rent not owed deceived Ms. Ashare into making payments towards rent which could not lawfully be collected under Multiple Dwelling Law ("MDL") § 302. *Id.* Her joy in hobbies and time with friends or family evaporated under the relentless, crushing pressure of navigating court appearances and eviction paperwork entirely alone. She became a shadow of her former self, exhausted and sleep-deprived, often breaking into tears, and thinking of little else besides saving her family from homelessness. *Id.* ¶¶ 72-75, 77-81. Defendants traumatized Ms. Ashare, threatening her housing and financial stability and causing her enormous anguish and fear for months on end in an attempt to recoup a rental debt that, due to Defendant Landlords' own failure to obtain a valid Certificate of Occupancy, the Defendants were plainly statutorily barred from collecting.

**ARGUMENT**

I.      **MDL § 302 and the binding effect of *Smalls*.**

a.    **Plaintiff has sufficiently alleged that the MDL § 302 rent bar applies to 2293 3ʳᵈ Avenue and prohibits the collection of rent in such building.**

As Attorney Defendants readily acknowledge (MTD at 6), it is well-settled law that in order to survive a motion to dismiss under Rule 12(b)(6) a complaint must contain "sufficient factual matter, accepted as true, to state a claim that relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted).

In her complaint, Ms. Ashare alleged that: the subject building has lacked a valid Certificate of Occupancy for nearly ten years, since June 4, 2015, when the last temporary Certificate of Occupancy expired without the Department of Buildings issuing a new one, Complaint at ¶ 41; the Appellate Term, First Department, held in *E. Harlem MEC Parcel C, L.P. v. Smalls*, 82 Misc. 3d 127(A), 205 N.Y.S.3d 841 (N.Y. App. Term. 2024) that the subject "building lacks a valid certificate of occupancy," and as a result, the "landlord is precluded from seeking to recover rent...," *Id.* at ¶ 43; Defendant S&H represented the landlord in the *Smalls* appeal, which Defendant Hyman *himself* argued, subsequently receiving notification of the adverse ruling via the New York State Court Electronic Filing system ("NYSCEF"), *Id.* at ¶¶ 43, 90-91; and despite knowing of the Appellate Term's ruling in *Smalls*, Defendants frivolously pressed on and sued Ms. Ashare for uncollectable rent, *Id.* at ¶¶ 44, 83, 95, 129.

The Complaint further alleged the circumstances surrounding Defendants' mailing of a rent demand dated April 10, 2024 to Ms. Ashare seeking uncollectable rent, *id.* at ¶¶ 44-49, Defendants' refusal to promptly discontinue the nonpayment proceeding, *id.* at ¶¶ 64-70, and the fact that Defendants not only frivolously sued Ms. Ashare in 2024, but five previous times

during the ten-year period in which the building lacked a certificate of occupancy. *Id.* at ¶ 49. Plus, the Complaint alleged the harm suffered by Ms. Ashare due to Defendants' unlawful efforts to seek uncollectable rent. *Id.* at ¶¶ 71-81.

Moreover, Multiple Dwelling Law § 302(1) is extremely clear: a landlord may not recover rent, or commence a proceeding to recover rent, where a building lacks a valid certificate of occupancy. *See Chazon, LLC v. Maugenest*, 19 N.Y.3d 410, 971 N.E.2d 852, 948 N.Y.S.2d 571, 2012 N.Y. LEXIS 1315, 2012 NY Slip OP 4373, 2012 WL 2031118 (Court of Appeals 2012) (finding that the lack of a valid certificate of occupancy bars a nonpayment action). Notably, *Chazon*, a decision by New York's highest court, is more than a decade old; Attorney Defendants have had ample time to learn of its binding effect, which has been consistently interpreted by New York trial and appellate courts in a long line of cases following *Chazon*, including *Smalls* and the numerous cases cited therein. With all of the above allegations, plus more, the Complaint amply provided "sufficient factual matter, accepted as true, to state a claim that relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

### b. *Smalls* was binding precedent which precluded the Defendants from filing the Lawsuit against Ms. Ashare.

Central to all of the Plaintiff's claims is that Attorney Defendants had no right to sue or threaten to sue Ms. Ashare and dozens of others in the Subject Building. Notably, it does not matter if Attorney Defendants claim they lacked intent as to violations of the FDCPA and GBL 349: those statues are strict liability and intent is immaterial for liability. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) ("Because the [Fair Debt Collection Practices] Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85

N.Y.2d 20, 26, 647 N.E.2d 741, 745 (1995) (Under GBL 349 it "is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead.") Whether a representation is deceptive is not determined from the view of the debt collector but is a "least sophisticated consumer" under the FDCPA and an analogous "reasonable consumer" under GBL § 349. *See, e.g. Baptiste-Elmine v. Richland & Falkowski*, PLLC, No. 21-CV-4994 (RPK) (PK), 2025 WL 974346, at \*10, 12 (E.D.N.Y. Apr. 1, 2025) (collecting cases).

In any event, the facts of this case demonstrate that the Attorney Defendants *knowingly* sought to collect on a debt that was uncollectable. The reason why such debt was uncollected is because the Appellate Term, First Department, held in the *Smalls* case that the subject building "lacks a valid certificate of occupancy" and so the "landlord is precluded from seeking to recover rent...." *E. Harlem MEC Parcel C, L.P. v. Smalls*, 82 Misc. 3d 127(A), 205 N.Y.S.3d 841 (N.Y. App. Term. 2024).

Appeals from the New York County housing court lie in the Appellate Term, First Department,[1] which means that the *Smalls* case is binding on the nonpayment proceeding Defendants instituted against the Plaintiff. *See Malta v. Brown*, 819 N.Y.S.2d 210, 12 Misc. 3d 1164(A) (N.Y.C. Civ. Ct., May 31, 2006) (holding that the New York County housing court "must follow decisions from the Appellate Term, First Department—a court with the power to reverse New York County Housing Part decisions…") (citations omitted); *Juniper Walk Condominium v Patriot Management Corp.*, 774 N.Y.S.2d 672, 3 Misc. 3d 748, (City Ct., White Plains, Mar. 26, 2004) (holding that "[u]nder the doctrine of stare decisis, a lower court must follow a decision of an Appellate Term to which an appeal from the former lies").

---

[1] NY City Civ. Ct. Act § 1701. The Appellate Term, First Judicial Department, "hears & decides appeals from the Criminal and Civil Courts of the City of New York for New York & Bronx Counties, including appeals from the Housing Part & the Small Claims Part." New York State Unified Court System, *1st JD - Supreme Court, Civil Branch, NY County*, *available at* https://ww2.nycourts.gov/courts/1jd/supctmanh/appellate_term.shtml.

Attorney Defendants state in their motion that the *Smalls* decision "left open the possibility that additional evidence and further disputes regarding the 2011 certificate of occupancy might change the outcome of a subsequent case." MTD at 10. They also insist that Defendant East Harlem Mec Parcel C L.P. "could have advanced new theories" in the nonpayment proceeding they filed against Ms. Ashare, including their reading of Multiple Dwelling Law §§ 301(4) and (6) suggesting that the subject building had a valid Certificate of Occupancy and thus rent could be collected. MTD at 11.[2]

It is unclear where in the *Smalls* decision Attorney Defendants see some type of wiggle room—the Appellate Term *unequivocally* determined that the subject building lacked a Certificate of Occupancy and therefore rent could not be collected:

> The evidentiary submissions *conclusively demonstrate*, and it is essentially undisputed, that after the 2011 certificate of occupancy was issued, the subject building had undergone a "type 1" alteration, including the addition of an eating and drinking establishment on the first floor; and that temporary certificates of occupancy issued between 2013 and 2015 had all expired and no new certificate of occupancy had been issued. Because the building *lacks* a valid certificate of occupancy, landlord is *precluded* from seeking to recover rent from tenant, *even though* tenant's apartment may not have been affected by the alterations.

*E. Harlem MEC Parcel C, L.P. v. Smalls*, 82 Misc. 3d 127(A), 205 N.Y.S.3d 841 (N.Y. App. Term. 2024) (emphasis added).

Additionally*,* as indicated above, Defendant East Harlem Mec Parcel C L.P., represented by Defendant S&H, litigated the *Smalls* case both in New York County housing court and before the Appellate Term, First Department. They argued that the subject building had a valid

---

[2] To be sure, Defendants' proffered arguments lack merit. The New York City Construction Code makes clear that no building that has been "altered so as to change from one occupancy group to another, or from one zoning use group to another, *either in whole or in part*, shall be occupied or used unless and until the commissioner has issued a certificate of occupancy," and further that a change "inconsistent with the last issued certificate of occupancy" requires "a new or amended certificate of occupancy." NYC Admin. Code §§ 28-118.3.1-2 (emphasis added). Here, as found by the Appellate Term, the subject building changed from one occupancy group to another, rendering the building inconsistent with the prior 2011 Certificate of Occupancy, and hence requiring a new Certificate of Occupancy. *Smalls, supra.*

Certificate of Occupancy and therefore rent could be sought in a nonpayment proceeding. (Exhibit B, Defendants' *Smalls* Reply Brief). They lost, received real-time notification of the adverse ruling via NYSCEF, and chose not to appeal further. Whether any of Defendants' "possible" arguments have merit—they do not—is inconsequential because not only is the Appellate Term's decision in *Smalls* binding precedent on the collectability of rent in the subject building and the legality of proceedings seeking to collect rent, but also the doctrine of collateral estoppel bars Defendants from relitigating the same issue of fact decided in *Smalls*. Under New York law[3], "collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (quoting *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449 (1985))." Defendants were free to appeal the adverse *Smalls* ruling, but since they chose not to, they were *not free* to ignore it when they instituted a rent collection action against the Plaintiffs.

II.    <u>Noerr-Pennington</u>
   a.  **The Noerr-Pennington doctrine does not apply because Attorney Defendants' disregard for binding Appellate Term and Court of Appeals precedent was objectively baseless.**

The *Noerr-Pennington* doctrine arose in the antitrust context, but was expanded to be generally applicable to litigation to protect the First Amendment right to petition the government for redress of grievances, with exceptions (for example, in breach-of-contract actions; *see Regel v. Campbell Soup Co.*, 2025 WL 2733840 at *6 (S.D.N.Y. 2025) (stating that Second Circuit courts have never applied, and are skeptical of, *Noerr-Pennington* in the breach of contract

---

[3] Federal Court looks to the preclusion law of the state in which the precluding judgment was rendered, and hence New York preclusion law directs the federal court here. *See Marresev American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

context) (collecting cases). Defendants have not cited to a single decision – and Plaintiff has discovered none – that dismiss an FDCPA claim based on *Noerr-Pennington*.

A few courts suggest that *Heintz* undermines the very application of the doctrine to the FDCPA, while all others hold that various incarnations of the "sham" exception applied and denied the motion to dismiss on that ground.  Given the Supreme Court's holding in *Heintz v. Jenkins* expressly disclaiming the related litigation privilege in the FDCPA context, it is hard to imagine a workable application of *Noerr-Pennington* to the litigating activities of attorney debt collectors. *See Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 615-16 (6th Cir. 2009) (suits on time-barred debts) (citing *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)); *Fritz v. Resurgent Capital Services L.P.*, 955 F.Supp.2d 163, 175-76 (E.D.N.Y. 2013) (expressly adopting the reasoning of *Hartman* that "the application of the [*Noerr-Pennington*] doctrine would negate the Supreme Court's "detailed analysis and clear conclusion" in" *Heintz* that the FDCPA application to attorneys in litigation; the "bona fide error" defense adequately protects "whatever constitutional protections unintentional misrepresentations enjoy") (suits misidentifying creditor and misrepresentation of debt collection license); *Cameron v. LR Credit 22, LLC*, 998 F.Supp.2d 293, 300 n. 8 (S.D.N.Y. 2014) ("the Noerr-Pennington doctrine does not apply here.") (time-barred suit); *Shetiwy v. Midland Credit Management*, 980 F.Supp.2d 461, 475 n. 81 (S.D.N.Y. 2013) ("Several courts have concluded that the *Noerr-Pennington* doctrine does not bar suits under the FDCPA based on litigation misconduct by debt collectors") (collecting cases); *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019) (suits with insufficient ownership of debt and false affidavits); *Toohey v. Portfolio Recovery Assocs., LLC*, 2016 WL 4473016 (S.D.N.Y. 2016) ("it is doubtful the [*Noerr-Pennington*] doctrine applies to FDCPA causes of action" (suits with insufficient proof of

ownership of debt) *citing Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 114 F.Supp.3d 1342, 1359-60 (N.D.Ga. 2015) (suits with lack of meaningful attorney review) (finding *Noerr-Pennington* inapplicable in the FDCPA context under the logic of *Heintz* and *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, et al.*, 559 U.S. 573, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010))); *Gold v. Shapiro, Dicaro & Barak, LLC*, 2019 WL 4752093 at *6 fn. 9 (S.D.N.Y. 2019) (time barred suits) (*Noerr-Pennington* inapplicable to FDCPA claims arising from litigation misconduct). Even assuming *Noerr-Pennington* can be applied to an FDCPA claim, Attorney Defendants do not cite to a **single** case in which *Noerr-Pennington* was successfully used to prohibit an FDCPA claim.

However, a well-established exception to *Noerr-Pennington* is sham litigation: that is, litigation which is "**objectively** baseless in the sense that no **reasonable** litigant could realistically expect success on the merits." *Singh v. NYCTL 2009-A Trust*, 683 Fed.Appx. 76, 78 (2d Cir. 2017) (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d. 611 (1993)) (emphasis added). The use of the terms "objective" and "reasonable" demonstrate the standards are objective.

The Plaintiff's FDCPA claim is analogous to other FDCPA lawsuits that were held to fall within the sham exception. *See, e.g. Baptiste-Elmine v. Richland & Falkowski, PLLC*, No. 21-CV-4994 (RPK) (PK), 2025 WL 974346, at *13 (E.D.N.Y. Apr. 1, 2025) (threatening to foreclose on partially time-barred debt) (collecting cases). More generally, the sham exception "excludes any abuse of process that bars access to the courts, such as "'unethical conduct in the setting of the adjudicatory process' or the pursuit of a 'pattern of baseless, repetitive claims.'" *Sykes v. Mel Harris and Assocs., LLC*, 757 F.Supp.2d 413, 429 (S.D.N.Y. 2010) (quoting *Landmarks Holding Corp. v. Bermant,* 664 F.2d 891, 896 (2d Cir.1981) (quoting *Calif. Motor*

11

*Transp. v. Trucking Unltd.,* 404 U.S. 508, 513, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)). Attorney Defendants' brazen disregard of binding Court of Appeals precedent[4] in the filing of more than 100 MDL § 302-barred nonpayment eviction proceedings since the expiration of the Certificate of Occupancy in 2015 is egregious enough to qualify as a pattern of baseless, repetitive claims; their post-*Smalls* disregard[5] of a binding adverse ruling *in a case they litigated themselves* is shocking and unethical conduct in the setting of the adjudicatory process.

More importantly, the Defendants *knew* (or should have known) that they could not have expected to succeed in the litigation against Ms. Ashare, because the *Smalls* court made a finding of fact that 2293 3rd Avenue lacked a valid Certificate of Occupancy, which therefore barred the owners of 2293 3rd Avenue (and their attorneys) from initiating new proceedings for the collection of rent under *Chazon* and MDL § 302. As stated above, e Defendants could have pursued further appeals of *Smalls*, but they declined to do so, instead preferring to continue ambushing unsuspecting tenants with baseless eviction lawsuits in the hopes of their scheme continuing unnoticed and unopposed. If "sham litigation" does not include the filing of new

---

[4] As a preliminary matter, Attorney Defendants' focus on the existence of administrative agency findings that a building lacks a valid Certificate of Occupancy is misdirected; the MDL § 302 rent bar does not require an administrative agency finding to be operative. Under *Chazon*, a 2012 decision, MDL § 302 only requires the absence of a valid certificate of occupancy, which the *Smalls* court found as a matter of fact after Defendants had a full and fair opportunity to litigate—in both the trial court and the Appellate Term—the merits of whether a valid certificate of occupancy existed for 2293 3rd Avenue. While it is true that *West 48th Holdings LLC v. Eliyahu* is, as Attorney Defendants state, a case in which there was never a valid certificate of occupancy for the subject building, that is not the proposition for which the *Smalls* court cited *West 48th Holdings* (or, for that matter, *Ormonde.*) *West 48th Holdings LLC v. Eliyahu*, 64 Misc.3d 133(A), 116 N.Y.S.3d 843 (N.Y. App. Term 2019). Rather, the *Smalls* court cited *West 48th Holdings* (and *Ormonde*) for the proposition that the MDL § 302 rent bar applies "even though [the] tenant's apartment may not have been affected by the alterations" which necessitated a new certificate of occupancy. *E. Harlem MEC Parcel C, L.P. v. Smalls*, 82 Misc.3d 127(A), 205 N.Y.S.3d 841 (N.Y. App. Term 2024).

[5] Also as a preliminary matter, contrary to Defendants' claims that all of the cases cited in *Smalls* were distinguishable, *Ormonde* is directly factually analogous, as the subject building in *Ormonde* had a final certificate of occupancy vitiated by later renovations, just as with 2293 3rd Ave. *See Ormonde Equities LLC v. Suzanne Jacoby*, LT-303005-20/NY, NYSCEF Doc. No. 50 (November 22, 2022 decision by Judge Daniele Chinea) (Exhibit A). The landlord in *Ormonde* made the identical argument to Defendants here: that an earlier final certificate of occupancy continues to apply to unaltered floors or building spaces after an alteration which only affects certain floors or building spaces. The court in *Ormonde* rejected this argument, and *Ormonde*, like *Smalls*, was affirmed on appeal. *Ormonde Equities LLC v. Jacoby*, 81 Misc.3d 137(A), 204 N.Y.S.3d 290 (N.Y. App. Term 2023).

actions in trial court after an appellate court has rendered a binding decision prohibiting such new actions, "sham litigation" means very little at all. There is no *Noerr-Pennington* protection for intentional misrepresentations made in litigation. *See e.g. Fritz v. Resurgent Capital Services, L.P.*, 955 F.Supp.2d 163, 175-76 (E.D.N.Y. 2013) (citing *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606 (6th Cir. 2009)). Every pleading, rent demand, and eviction notice against Ms. Ashare made the representation that Defendants had the lawful right to seek rent from Ms. Ashare—in spite of a binding appellate ruling to the contrary.

### III.    GBL § 349

In order to state a claim under GBL § 349, an individual must demonstrate that (1) the conduct at issue was consumer-oriented, that (2) the defendant's act or practice is materially misleading or deceptive, and (3) that the plaintiff was injured as a result. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (Ct. of Appeals 1995).

Attorney Defendants argue that Ms. Ashare has failed to state a claim for violations of G.B.L. § 349, mainly on the basis that she has not adequately pleaded the "consumer-oriented" element of that cause of action. In particular, Attorney Defendants argue there is a categorical exclusion of lawsuits to collect rent – as opposed to a lawsuit to collect any other type of debt. They argue a debt for rent accrues out of a lease contract between and individual tenant and an individual landlord. But any consumer debt arises from a contract between an individual consumer and an individual creditor. Attorney Defendants provide now logical reason one should be treated differently than the other. This is especially true because of the broad scope of GBL 349.

GBL § 349 applies "to virtually all economic activity, and [its] application has been correspondingly broad." *Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 290 (1999). Indeed, the statute has been applied to deceptive practices in all sorts of areas. The consumer-oriented

13

requirement also "does not require a repetition or pattern of deceptive behavior." *Oswego*, 85 N.Y.2d at 25. Rather, "[a] claim brought under this statute must be predicated on an act or practice which is 'consumer-oriented,' that is, an act having the potential to affect the public at large, as distinguished from merely a private contractual dispute...." *Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888 (3rd Dept. 2008) *citing Oswego*, 86 N.Y. 2d 20. The Court of Appeals noted that this holding was consistent with the legislative intent of GBL § 349 to stop consumer frauds at their initial stages rather than waiting for more persistent frauds to develop. *Id.* at 25.

The application of GBL § 349 to the landlord-tenant relationship was specifically addressed in its legislative history. GBL § 349-c, which provides heightened penalties for deceptive conduct directed at the elderly, provides a list of bad conduct for determining whether the supplemental penalty should be applied, including "[w]hether the defendant's conduct caused an elderly person or persons to suffer severe loss or encumbrance of a primary residence." GBL § 349-c(b)(2). The argument that deceptive landlord conduct is not covered is directly contradicted by the statutory language which makes preservation of housing an explicit purpose.

Attempts by creditors to collect a debt that was not owed, that could not lawfully be sued upon, in whole or in part, or which misstate the amount owed, has repeatedly been found to be consumer oriented. *See McCrobie v. Palisades Acquisition XVI, LLC,* 359 F. Supp. 3d 239, 255 (W.D.N.Y. 2019) (systematically collecting debts that Defendant "did not in fact have the legal right to collect that debt" was consumer-oriented); *Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (deceptive form debt collection letter was consumer-oriented); *Campbell v. MBI Assocs., Inc.,* 98 F. Supp. 3d 568, 588 (E.D.N.Y. 2015) ("sending form collection letters" that are deceptive can be consumer-oriented

as opposed to letter sent particularly to one consumer by mistake); *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 116 (S.D.N.Y. 2016) (demand in 147 collection lawsuits for attorney's fees that was not permitted by law or agreement was consumer-oriented).

Attorney Defendants' reliance on *Remler v. Cona Elder Law, PLLC*, No. 21-CV-5176(ARR)(LB), 2022 WL 4586243, at *8 (E.D.N.Y. Sept. 29, 2022) is inapposite. There, plaintiff attempted to plead a "pattern of deception" by merely citing to other lawsuits filed by the same debt collector alleging similar claims; the plaintiff failed to plead enough factual matter to plausibly allege that those other lawsuits had been deceptive. That is not the case here, where the pattern-and-practice cases alleged by Ms. Ashare in paragraphs 101-110 of her Complaint were against fellow tenants *of the same building* who are likewise protected from collection by the MDL § 302 rent bar. Attorney Defendants filed 82 (unlawful) non-payment petitions to tenants in the building while the building had no certificate of occupancy, ¶ 107, and necessarily were required to send them multiple predicate rent demand letters, ¶ 46-55, prior to filing the action. Unlike in *Remler*, therefore, Ms. Ashare has plausibly alleged that Attorney Defendants' acts were consumer-oriented. Moreover, Defendants are wrong in their contention that the violation of § 349 did not injure Ms. Ashare; their act of filing a completely baseless eviction lawsuit caused her to incur expenses in defending against the lawsuit, as described above.

Attorney Defendants misstate Plaintiff's allegations. In context, ¶¶ 101-110 do not rely merely on the volume of lawsuits as a primary basis for establishing Plaintiff's claims. Rather, they allege consumer-oriented conduct in the form of 82 statutorily barred eviction lawsuits against tenants of Ms. Ashare's building while the building lacked a Certificate of Occupancy, at the very least suggesting a lack of meaningful attorney review, particularly when viewed in

conjunction with the thousands of lawsuits filed by Attorney Defendants—a small, four-person firm—each year. ¶¶ 12, 13, 102, 104. Defendant Marc Hyman himself filed approximately 1,241 Landlord Tenant Nonpayment cases in just the nine months between July 11, 2024 and April 4, 2024, ¶ 13, including the most recent suit against Ms. Ashare.

Attorney Defendants also cite to a trio of federal cases for the proposition that GBL § 349 either does not apply in the landlord-tenant context, or requires broader allegations than those already pleaded by Plaintiff. However, the exclusion of landlord-tenant disputes from the protections of GBL § 349 is not the rule, as acknowledged by the very decision Attorney Defendants most directly cite for the proposition that GBL § 349 is inapplicable to the landlord-tenant context. *Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, 2018 WL 2247206 at *7 n. 4 (S.D.N.Y. 2018) (collecting cases). Courts are willing to apply GBL § 349 to the landlord-tenant context where the plaintiff sufficiently alleges a pattern or practice of deceptive, consumer-oriented conduct, such as regularly filing statutorily and judicially barred eviction suits, as Ms. Ashare alleges here. *See e.g. Sanchez v. Ehrlich*, No. 16-cv-8677 (LAP), 2018 WL 2084147, at *11 (S.D.N.Y. Mar. 29, 2018) (concluding that plaintiff had stated a claim under GBL § 349 when plaintiff asserted a claim on her behalf but also pleaded that defendants engaged in a pattern or practice of bringing housing court proceedings against low-income tenants for rent they did not owe); *Torres v. Gutman, Mintz, Baker & Sonnenfeldt P.C.*, No. 17-cv-4109 (KAM) (CLP), 2018 WL 1545687, at *3 (E.D.N.Y. Mar. 29, 2018) (same). One case cited by Attorney Defendants which dismissed a GBL § 349 claim for a lack of consumer-oriented conduct specifically invited the plaintiff to replead the claim with "concrete allegations *concerning similar conduct aimed at an appreciable number of other tenants*." *Brake v. Slochowsky & Slochowsky, LLP*, 504 F.Supp.3d 103, 115-16 (E.D.N.Y. 2020) (emphasis added).

That is precisely what is done in the instant complaint.

### a. There is no basis to categorically exclude tenants from the protections of GBL § 349.

The Attorney Defendants' Motion to Dismiss strongly implies that as a matter of law, GBL § 349 does not apply to disputes between landlord and tenants, reasoning that they are more akin to private contract disputes than situations which call for the invocation of consumer protection law. Def.'s Mot. Dismiss p. 13-14. Defendants' argument relies on cases which held that simple allegations of high volumes of wrongful lawsuits, primarily in the landlord-tenant context, are insufficient to sustain a GBL § 349 claim—but that is not what Plaintiff alleges here. Ms. Ashare alleges a high volume of wrongful eviction lawsuits which all share a single, fatal defect: the lawsuits are against tenants of 2293 3rd Avenue, who are protected from rent collection by the MDL § 302 rent bar as applied by *Chazon*, and, as of 2024, *Smalls*. Ms. Ashare further alleges that the Defendants knew or should have known of the lack of a valid Certificate of Occupancy, and of its operation as a bar to rent collection, throughout their campaign of eviction lawsuits against her *and her neighbors*. In any event, Defendants knew or should have known of the complete bar to their nonpayment suits no later than after the Appellate Term's holding in *Smalls*, a case brought and argued by the Attorney Defendants on behalf of the Landlord Defendants against Ms. Ashare's upstairs neighbor.

In *Lozano v. Grunberg,* 195 A.D.2d 308 (App. Div. 1st Dept. 1993), the court reversed the Supreme Court's dismissal of the tenant's action challenging the landlord's repeated issuance of deceptive notices under GBL § 349. In *Myerson v. Prime Realty Services, LLC,* 7 Misc.3d 911, 921 (Sup. Ct. NY Co. 2005), the court held that repeated false demands that tenants were required to disclose their social security numbers was consumer-oriented because "defendants own and manage a substantial number of rent-regulated apartments, and use the challenged

17

forms for all lease renewals, so that the dispute is not simply a private contract dispute and generally claims involving residential units are a type of claim recognized under the statute."

Attorney Defendants also cite *Collazo v. Netherland Prop. Assets LLC*, 35 N.Y.3d 987, 149 N.E.3d 30 (2020) in support of their GBL § 349 argument. But *Collazo* expressly leaves open the question of whether GBL § 349 can be applied in the landlord-tenant context, "assum[ing] without deciding that a claim may lie under General Business Law § 349 based upon a landlord's alleged misrepresentation to the public...." *Collazo*, 35 N.Y.3d at 990.

Many consumer transactions are contracts in which an individual consumer is deceived by a seller or other contracting party, but the consumer's status as an individual does not mean GBL § 349 does not apply. *See e.g., Small v. Lorillard Tobacco Co.*, Inc. 94 N.Y.2d 43 at 55 (1999). GBL § 349 is a consumer-protection statue, and consumers interact with the marketplace through individual contractual dealings. A lease between a landlord and a tenant is no different than a lease for a car, or a contract to buy a sofa, or a mortgage contract, or any other consumer transaction. While the underlying dispute here is between a tenant and her landlord, Landlord Defendants' deceptive conduct here is consumer-oriented because it has the potential to affect consumers more broadly. In fact, the conduct here—misrepresenting the amount of money owed, or whether money is owed at all—is precisely analogous to debt collection activity which has been held to state a claim for GBL § 349 liability.

**b. Defendants' misconduct here is no different than any other debt collection activity that gives rise to GBL § 349 liability.**

Attempts by creditors to collect money that was not owed or misstate the amount owed have repeatedly been found to be consumer oriented. *See McCrobie v. Palisades Acquisition XVI, LLC,* 359 F. Supp. 3d 239, 255 (W.D.N.Y. 2019) (systematically collecting debts that Defendant "did not in fact have the legal right to collect that debt" was consumer-oriented);

18

*Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (deceptive form debt collection letter was consumer-oriented); *Campbell v. MBI Assocs., Inc.,* 98 F. Supp. 3d 568, 588 (E.D.N.Y. 2015) ("sending form collection letters" that are deceptive can  be consumer-oriented as opposed to letter sent particularly to one consumer by mistake). There is no reason to deprive consumers of such protection under the law simply because the actors engaging in the deceptive acts happen to be collecting rental arrears, and courts have been willing to extend these protections to tenants in the past; *see e.g. Sanchez v. Ehrlich*, No. 16-cv-8677 (LAP), 2018 WL 2084147, at *11 (S.D.N.Y. Mar. 29, 2018); *Lozano v. Grunberg,* 195 A.D.2d 308 (App. Div. 1st Dept. 1993).

## IV.    <u>Judiciary Law § 487</u>

Defendants next take aim at Plaintiff's Judiciary Law § 487 claim arguing (1) that the type of conduct alleged by Plaintiff is not covered by Judiciary Law § 487; and (2) that Plaintiff's allegations of Attorney Defendants' intent are conclusory and, thus, insufficient.  For the reasons described below, these arguments are incorrect.

### a.   **Attorney Defendants' misrepresentations are covered by Judiciary Law § 487.**

First, Attorney Defendants' misrepresentations in the Lawsuit, including that such Lawsuit was meritorious and not barred by statute, are most certainly actionable under the statute. "[T]he purpose of Judiciary Law § 487(1) is to safeguard an attorney's special obligation of honesty and fair dealing *in the course of litigation* – a pillar of the profession." *Bill Birds, Inc. v. Stein Law Firm, P.C.*, 35 N.Y.3d 173, 178 (N.Y. 2020) (emphasis added). Defendants' brief cites to *Bill Birds* for the proposition that the statute "does not encompass the filing of a pleading or brief containing nonmeritorious legal arguments, as such statements cannot support a claim under the statute." *Id.* at 180. While Defendants do not misquote *Bill Birds*, they do leave out

important context. What the Court of Appeals was saying was that clients cannot state § 487 claims *against their own attorneys* for filing nonmeritorious claims, because under such circumstances, the deception directed against the attorney's own clients does not take place *in the course of litigation*. Even if the initial pleading includes misrepresentations, it is not the initial pleading that is misleading the attorney's own clients; rather, the deception lies in the faulty *legal advice* that happens before the initial pleading is even filed. Because that legal advice happens before the beginning of litigation, it is not covered by Judiciary Law § 487.

To see this, one need only look at the *Bill Birds* court's treatment of *Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 903 N.E.2d 265, 874 N.Y.S.2d 868 (N.Y. 2009): "[T]he conduct underlying the claim in *Amalfitano* – the making of a false statement of fact in the complaint . . . – fell squarely within the scope of the statute because the misrepresentations at issue were made in the context of an action pending in court." *Bill Birds*, 12 N.Y.3d at 178. In contrast, the facts before the *Bill Birds* court were more like an earlier case called *Looff v. Lawton*, 97 N.Y. 478 (1884), which involved an attorney who "provided false and untrue legal advice to induce plaintiffs to bring an unnecessary lawsuit," which did not amount to a claim "because the statute applied only to conduct that occurs in the context of an action pending in a court – not misleading advice preceding an action . . . ." *Bill Birds*, 12 N.Y.3d at 178.

Here, because all of Defendants' misrepresentations were directed toward Ms. Ashare and the state court in the form of a legal pleading as part of litigation, the closer analogue is *Amalfitano*.

### b. Plaintiff has pleaded sufficient allegations to sustain a claim under Judiciary Law § 487.

Second, Plaintiff has pleaded a multitude of specific facts to support her allegations that Attorney Defendants intended to deceive both her and the state court. ¶¶ 82-110. Specifically,

Attorney Defendants filed 82 statutorily barred nonpayment eviction proceedings, two of which (including the most recent case against Ms. Ashare) came after Attorney Defendants received, on behalf of their clients the Landlord Defendants, notice of an adverse, binding, and precedential ruling finding that 2293 3rd Avenue lacked a valid Certificate of Occupancy and therefore its owners could not seek rent from their tenants. *See Smalls, supra.*

Intent under Judiciary Law § 487 is a fact-intensive inquiry that cannot be determined on a motion to dismiss. *Dimovski v. Tolisano & Danforth, L.L.C.,* No. 3:10-CV-205 JCH, 2011 WL 1638051, at *5 (D. Conn. Apr. 29, 2011)*, Guzman v. Mel S. Harris & Assocs., LLC,* No. 16 CIV. 3499 (GBD), 2018 WL 1665252 (S.D.N.Y. Mar. 22, 2018)*, and McMahon v. Credex Am., Inc.,* No. 06-CV-845A, 2009 WL 5171888 (W.D.N.Y. Dec. 22, 2009)*. Notably, a very similar Judiciary Law § 487 claim survived dismissal in *Diaz v. Portfolio Recovery Assocs., LLC,* No. 10 CV 3920 ERK, 2012 WL 661456, at *7-8 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted,* No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012).

A similar "broad pattern of deceptive filings" is evident in Plaintiff's allegations. The Complaint presents evidence of 82 different times Attorney Defendants have done this. *See* Complaint, Dkt. No. 1, at ¶¶ 93, 101-110. And two of the 82 statutorily-barred lawsuits uncovered by Plaintiff, including the most recent one against her, came after Attorney Defendants received notice of the Appellate Term's binding, precedential decision in *Smalls. Id.* at ¶ 93. While anyone can slip up once, Attorney Defendants' longstanding pattern of suing for statutorily barred rent indicates an intent to deceive consumers on a large scale.

Attorney Defendants did not merely make a mistake and then immediately correct it. After Ms. Ashare raised the lack of a Certificate of Occupancy as an affirmative defense and counterclaim, Attorney Defendants could have immediately dismissed the Lawsuit. Attorney

Defendants were given further notice and opportunity to discontinue by MLS on two more occasions: on November 22, 2024, via letter; and on November 26, 2024, via email. *Id.*, ¶¶ 65-67. Instead, Attorney Defendants doubled down by appearing in court and refusing to discontinue the case, forcing MLS to file a summary judgment motion before Attorney Defendants finally relented and agreed to discontinue their meritless case. *Id.*, ¶¶68-70. In other words, even after Attorney Defendants were put on notice (first by the Appellate Term in *Smalls*, then by Ms. Ashare and her counsel) that the alleged debt was statutorily barred, they pressed on with the lawsuit with the intent of wearing down Ms. Ashare and deceiving the state court. Their ratification of their earlier decision tends to support the conclusion that Attorney Defendants knew just what they were doing and acted intentionally in the first instance to disregard a binding and precedential decision applying MDL § 302 to 2293 3rd Avenue.

In short, Ms. Ashare's allegation that Attorney Defendants intentionally deceived both her and the court are not conclusory; it is backed up by specific allegations that Attorney Defendants continued to press the Lawsuit against her even after a point in time when they were definitely on notice—after *Smalls*—that the putative debt was statutorily barred, as well as allegations that the Lawsuit was part of a larger, intentional pattern of deceiving consumers. For these reasons, Ms. Ashare has adequately pleaded her Judiciary Law § 487 claim.

## V.    Negligence and gross negligence

### a.   Duty for negligence and gross negligence claims

To state a negligence cause of action, a plaintiff must allege 1) the existence of a duty on the defendant's part to the plaintiff, 2) a breach of this duty, and 3) injury to the plaintiff resulting from that breach. *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013).

Attorney Defendants contend that they have no duty to Ms. Ashare, and thus her claims for negligence and gross negligence must fail. However, the duty for Attorney Defendants arise from their obligations to not violate their statutory obligations under the FDCPA and GBL § 349. *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *7 (S.D.N.Y. Mar. 29, 2018) (suit for rent not lawfully chargeable to the tenant). Because Attorney Defendants violated the FDCPA and GBL § 349 for the reasons stated above, Attorney Defendants breached that duty of reasonable care.

Under *Crespo*, intentional misrepresentation of a consumer's rights—such as the consumer's rights as a tenant under MDL § 302—states a claim for gross negligence and punitive damages in the FDCPA context that must be resolved at trial. *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO), 2025 WL 871637, at *9 (S.D.N.Y. Mar. 20, 2025). The case at bar fits comfortably into that standard at the motion to dismiss stage.

### b. Intent for gross negligence claims.

Second, Attorney Defendants assert that because Plaintiff supposedly alleges intentional misconduct, Plaintiff's negligence claims must necessarily fail. As a preliminary matter, this misstates the content of Plaintiff's complaint; Plaintiff specifically pleads negligence in the *alternative* to the extent her complaint is deemed to allege intentional misconduct. Complaint ¶ 138. While Plaintiff briefly states that Defendants' actions "smack[] of intentional wrongdoing," such an allegation is precisely the standard for gross negligence as articulated by the Court of Appeals under New York law: "[i]t is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 824, 611 N.E.2d 282, 284 (1993) (citing *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 553, 593 N.E.2d 1365, 1370 (1992).) Even if intentional conduct categorically bars

a negligence claim, Plaintiff's claim does not rest on an allegation of intentional conduct.

Attorney Defendants cite to a case, *Onfroy v. The Law Offices of Geoffrey T. Mott, P.C.*, 751 F.Supp.3d 195 (E.D.N.Y. 2024), in which a federal district court held that intentional conduct could not support a negligence or gross negligence claim under New York law, citing to a pair of Appellate Division cases and a Second Circuit case. However, caselaw from both the New York Court of Appeals and the Second Circuit conflicts with this proposition.

The Court of Appeals has repeatedly held that the appearance of intentional wrongdoing states a claim for gross negligence. *Colnaghi*, 81 N.Y.2d 821, 824; *Sommer*, 79 N.Y.2d 540, 553; *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385, 448 N.E.2d 413, 416 (1983). Additionally, the Court of Appeals, citing *Colnaghi*, analogized the reckless disregard standard in another context to a finding of "general intentionality, not necessarily with intent to cause particular injury." *Campbell v. City of Elmira*, 84 N.Y.2d 505, 511, 644 N.E.2d 993, 996 (1994). Separately, the Second Circuit case cited, *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351 (2d Cir. 1993), only holds that *battery* and negligence are mutually exclusive. Plaintiff does not allege actions akin to battery; she alleges a rental arrears collection scheme which is deliberately indifferent as to whether the rent sought can be lawfully collected, hardly comparable to a case in which a bouncer sent the plaintiff into a two-week coma with a fractured skull.

### c. Reckless indifference

Finally, Attorney Defendants claim Plaintiff's negligence claims must fail because Plaintiff failed to plead facts alleging "reckless indifference," focusing on Plaintiff's concluding recitations of the causes of action rather than the sections of her complaint actually containing factual allegations. Most important among those are the factual allegations that Attorney Defendants continued sending collection letters and eviction notices, and actually filed a

nonpayment action against Ms. Ashare, after receiving (and declining to appeal) an appellate court decision specifically prohibiting the collection of rent in Ms. Ashare's building so long as the building continued to lack a valid Certificate of Occupancy. Complaint ¶¶ 43-70. If Attorney Defendants wished to challenge the Appellate Term's holding in *Smalls* on behalf of Landlord Defendants, as would have been their right, the proper route was further appeals of *Smalls*, not the initiation of new housing court litigation against other tenants in the same building.

It is true that the bar for gross negligence is a high one; gross negligence requires conduct which "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A. v. Jewelers Prot. Servs.*, 611 N.E.2d 282, 284 (N.Y. 1993). In a previous Southern District of New York FDCPA case, the court held that plaintiffs had failed to state a claim for gross negligence where defendants repeatedly sued based on faulty rent ledgers which overstated tenants' rent balances, finding that the complaint "fail[ed] to allege sufficiently a degree of neglect demonstrating a reckless indifference to the safety of human life or an intentional failure to perform a manifest duty to the public." *Sanchez v. Ehrlich*, 2018 WL 2084147 at *7 (S.D.N.Y. 2018). Here, Defendants lack even the thin exculpatory excuse of faulty documents; the wrongfulness of their suit, which stems from the MDL § 302 rent bar as applied by the Appellate Term *to Ms. Ashare's building in specific*, was or should have been evident to the Attorney Defendants at the time of their filing, since Attorney Defendants were the same firm and the same attorney which had argued and lost in *Smalls*. Attorneys and litigants owe a manifest duty to the public and to the courts to *actually read* the decisions issued in cases they litigate, and to obey the orders of the courts in which they litigate.

## CONCLUSION

For the above reasons, Defendants' motion to dismiss should be denied in full.

DATED: Brooklyn, New York
      October 24, 2025

                  Respectfully submitted,

                  By: */s/ Ahmad Keshavarz*

                  Ahmad Keshavarz, Esq.
                  LAW OFFICE OF AHMAD KESHAVARZ
                  16 Court St., Suite 2600
                  Brooklyn, NY 11241
                  Phone: (718) 522-7900
                  Email: ahmad@NewYorkConsumerAttorney.com

DATED: New York, New York
      October 24, 2025

                  Respectfully submitted,

                  MANHATTAN LEGAL SERVICES
                  2090 Adam Clayton Powell Jr Blvd, 5th Floor
                  New York, NY 10027
                  Phone: (646) 442-3313
                  Email: mrockett@lsnyc.org
                  Email: cmacarthur@lsnyc.org
                  Email: Lahenriquez@lsnyc.org

                  By: */s/ Cecilia MacArthur*
                  _____
                  Cecilia MacArthur, of Counsel

                  By: */s/ Mary "Molly" Rockett*
                  _____
                  Mary "Molly" Rockett, of Counsel

                  By: */s/ Luis Henriquez Carrero*
                  _____
                  Luis Henriquez Carrero, of Counsel

cc: all counsel of record (via ECF)