USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/18/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

PERPETUAL ASHARE,

                              Plaintiff,

             -against-

SONTAG & HYMAN, P.C., et al.,

                          Defendants.

_____X

**25-CV-2834 (GHW) (KHP)**

**REPORT AND RECOMMENDATION**
**ON MOTION TO DISMISS**

**TO:**    **THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Perpetual Ashare ("Plaintiff") brings this action against Sontag & Hyman, P.C. ("S&H") and attorney Marc H. Hyman (together, the "Attorney Defendants") for violations of the Fair Debt Collection Practices Act ("FDCPA"), New York General Business Law ("GBL") § 349, New York Judiciary Law § 487, and for negligence and gross negligence, and against the remaining defendants, East Harlem Mec Parcel C, L.P. ("LP"), East Harlem MEC Parcel C Housing Development Fund Corporation ("HDFC"), Richman Property Services Inc. ("Richman") and Metro 125, Inc. ("Metro 125") (the "Landlord Defendants") for violation of GBL § 349 and for negligence and gross negligence. Before the Court is the Attorney Defendants' motion to dismiss. For the reasons set forth below, I respectfully recommend that the motion be granted in part and denied in part.

**BACKGROUND**

Plaintiff has been living in a rent-stabilized apartment in East Harlem with her two children since 2012. (Complaint ("Compl.") ¶ 1) Defendants LP and HDFC own the building in which Plaintiff lives, and the building is managed by Richman and Metro 125. The Attorney

Defendants represent landlords in connection with suits against tenants who have failed to pay their rent.  (*Id*. ¶ 12)  S&H also sends debt collection letters to tenants who owe rent prior to bringing lawsuits.  In such letters, it identifies itself as a debt collector.  (*Id*.)  Hyman is a founder of S&H and supervises the firm's landlord/tenant litigation practice.  (*Id*. ¶ 13)

Until January 2024, Plaintiff paid rent to Metro 125.  (*Id*. ¶ 32)  Thereafter, she paid rent to Richman.  (*Id*. ¶ 33)  Because her apartment is subject to New York's Rent Stabilization Law, the federal Low Income Housing Tax Credit Program, and the HOME Investments Partnerships Program (*Id*. ¶ 24), Plaintiff must submit documents annually verifying her income and continuing eligibility for the low rent apartment.  (*Id*. ¶ 37)

On January 18, 2024, the Attorney Defendants sent Plaintiff a collection letter indicating she owed $3,369.76 in past due rent.  (*Id*. ¶ 45)  The letter included certain disclosures required by the FDCPA.  (*Id*.)

By April of that year, Plaintiff had still not paid her rent.  Then, on April 10, 2024, the Attorney Defendants sent Plaintiff another letter demanding that she pay past due rent, indicating that she owed $3,617.44 (itemized as $854.76 balance from February 2024 and $1,381.34 for March and April 2024). (*Id*. ¶ 46)  The letter required her to pay within five days or face an eviction proceeding in court.[1]  (*Id*. ¶ 47)   In response to the letter, Plaintiff worked overtime at her job to earn enough to pay the February and March amounts.  (*Id*. ¶ 50) On April 18, 2024, she went to Richman's office to make a payment in the amount of $2,245.10 toward her past due rent.  (*Id*. ¶ 51)  At around this same time, Plaintiff received a letter from the

---

[1] According to the Complaint, Plaintiff has a history of late payment of rent, which resulted in her being the subject of six different non-payment proceedings during the course of her tenancy.  (*Id*. ¶ 49 n.4)

2

Attorney Defendants dated April 11, 2024 titled "Thirty Day Demand Notice" demanding $3,617.44 in past due rent.  (*Id*. ¶ 52)  On June 5, 2024, Plaintiff went to Richman's office to pay an additional $2,800 toward her past due rent. (*Id*. ¶ 53)

On June 11, 2024, the Attorney Defendants commenced an eviction proceeding against Plaintiff under the caption *East Harlem Mec Parcel C v. Perpetual Ashare et al*., LT-300890-24/NY, seeking $1,381.34 in past due rent.  (*Id*. ¶ 56)

According to Plaintiff, her building has lacked a valid Certificate of Occupancy since June 4, 2015.  (*Id*. ¶ 41)  Accordingly, she contends that rent may not be lawfully collected from her and that she may not be sued in court for past due rent.  (*Id*. ¶ 42)  She notes that a state court affirmed dismissal of a rent collection suit against her neighbor in the building on March 25, 2024 on the grounds that the building lacked a valid certificate of occupancy.  (*Id*. ¶ 43)  See *E. Harlem MEC Parcel C. L.P. v. Smalls*, 82 Misc. 3d 127(A), 205 N.Y.S.3d 841 (N.Y. App. Term 2024) (the "*Smalls* Action").[2]

Based on the above, Plaintiff contends that she was excused from paying rent and that the Attorney Defendants violated the FDCPA, the GBL and the Judiciary Law for sending her demand letters and initiating actions against her for non-payment of rent.  (*Id*. ¶¶ 114, 118)  She further contends the Attorney Defendants were negligent or grossly negligent for initiating legal

---

[2] In *Smalls*, the court, in a one-paragraph decision, found that the Civil Court properly granted the tenant's motion to dismiss a nonpayment petition based on the evidentiary submissions that "conclusively" demonstrated that after the 2011 certificate of occupancy was issued, the building had undergone a type1 alteration involving a restaurant on the first floor of the building and that temporary certificates of occupancy issued between 2013 and 2015 had expired and no new certificate of occupancy had been issued.  The Court found that it was undisputed that the building lacked a valid certificate of occupancy, and then cited well-established New York law that a landlord is precluded from seeking to recover rent if a building lacks a valid certificate of occupancy, citing MDL §§ 301-302 and *Chazon LLC v. Maugenest*, 19 N.Y.3d 410, 415 (2012).  The Court said this is true even though the tenant's apartment was not affected by the alterations that were made pursuant to a temporary certificate of occupancy, citing *Ormonde Equities LLC v. Jacoby*, 81 Misc 3d 137(A) (1st Dept.).

action against her for rent.  (*Id*. ¶¶ 135-39)  Plaintiff contends that the Landlord Defendants knew or should have known that they did not have a valid Certificate of Occupancy for her building and were precluded from collecting rent and that the Attorney Defendants, who represented the landlord in the *Smalls* Action, also knew or should have known.  (*Id*. ¶ 56)

On July 2, 2024, Plaintiff went to the Harlem Community Justice Center for purposes of applying for a One-Shot Deal, a loan provided by New York City's Human Resources Administration ("HRA") for tenants facing eviction. [3]  (*Id*. ¶ 59)  She also answered the court complaint.  (*Id*.)  The Housing Court scheduled the first hearing in the case for July 29, 2024, which Plaintiff attended pro se.  (*Id*.)  Thereafter, Manhattan Legal Services ("MLS") agreed to represent Plaintiff on a pro bono basis in her housing case.  (*Id*. ¶¶ 63-65)

On November 21, 2024, MLS mailed a letter to the Attorney Defendants demanding they discontinue the rent collection lawsuit against Plaintiff on the ground that the landlord was barred from collecting rent due to there being no valid Certificate of Occupancy.  (*Id*. ¶ 66)  On November 26, 2024, MLS sent a similar letter to attorney Michael Giammarusco at S&H. (*Id*. ¶ 67)  Receiving nothing in response to its letters, MLS emailed Mr. Giammarusco asking that S&H discontinue the lawsuit against Plaintiff.  (*Id*. ¶ 68)

On December 3, 2024, MLS attended a Housing Court conference in Plaintiff's case and asked the Attorney Defendants to discontinue the action.  The Attorney Defendants did not agree, so the Court scheduled another proceeding for January 13, 2025.  (*Id*. ¶ 69)  On

---

[3] Per the Furman Center, "[t]he One Shot Deal Emergency Assistance program helps people who cannot meet an expense due to an unexpected situation or event. Emergency assistance is provided for, but not limited to, the following situations: homelessness, dispossession/eviction, utility disconnected or pending termination, fire disaster, domestic violence, or other circumstances that affect the health and safety of the individual or family ." *See* https://www.furmancenter.org/directory/one-shot-deal-short-term-emergency-assistance/ (last visited March 12, 2026).

December 17, 2024, MLS filed a summary judgment motion in Housing Court seeking dismissal of the action against Plaintiff with prejudice on the ground that her building did not have a valid Certificate of Occupancy. (*Id*.)  On January 13, 2025, the Attorney Defendants discontinued the action against Plaintiff with prejudice on behalf of the landlord. (*Id*. ¶ 70)

Plaintiff thereafter brought the instant action seeking a return of six-years' of rent she paid to her landlord arguing that it had no right to collect the rent due to the building lacking a valid Certificate of Occupancy.[4]  She also seeks damages for emotional distress she faced from the stress of being faced with eviction.

Plaintiff's claims against the Attorney Defendants are premised on her contention that they knew or should have known about the *Smalls* Action, which was brought by the Attorney Defendants, before commencing suit against her (two months after the New York Appellate Term ruled in the *Smalls* Action) and should have investigated whether there was a valid Certificate of Occupancy before issuing any demand letters and bringing suit against her for collection of the past due rent.

Plaintiff argues that the Attorney Defendants have a "widespread pattern and practice of engaging in debt collection without meaningful review." (*Id*. ¶ 101)  In support of that contention, she notes that the Attorney Defendants filed approximately 1,000 nonpayment eviction cases in local Housing Court in 2024. (*Id*. ¶ 103)  The Landlord Defendants have filed 127 cases against tenants in Plaintiff's building since 2015 (*i.e.,* during a period when it has not

---

[4] Plaintiff acknowledges there is a six-year statute of limitations under the Judiciary Law, a three-year statute of limitations under the GBL, and a one-year statute of limitations under the FDCPA and applicable to the state negligence claims. (*Id*. ¶ 71)  Thus, due to statute of limitations, she does not seek return of ten-years' worth of rent – the entire period that the building has lacked a valid Certificate of Occupancy.

had a valid Certificate of Occupancy).  (*Id.* ¶¶ 105-106)  The Attorney Defendants represented the Landlord Defendants in 82 of those 127 proceedings.  (*Id.* ¶ 107)   Forty-five of the 127 proceedings resulted in a monetary and possessory judgment against the tenants.  (*Id.* ¶ 109)

## LEGAL STANDARD

For a complaint to survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions or formulaic recitation of the elements of a cause of action[]."  *Id.* (internal citations omitted.)  In assessing a motion to dismiss, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations."  *Stadnick v. Lima*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotations omitted) (citing *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

When evaluating a motion to dismiss, a court may consider "any written instrument attached to the complaint as an exhibit, any statements or documents incorporated by reference in the complaint, documents that are 'integral' to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken." *Donoghue v. Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022).

6

**DISCUSSION**

The Attorney Defendants move to dismiss all the claims against them. First they contend the FDCPA claim is barred by the *Noerr-Pennington* Doctrine. Second they argue that the GBL claim fails to allege a deceptive, consumer-oriented practice. Third, they aver the Judiciary Law claim fails to sufficiently allege particular facts establishing a claim. Finally, they argue that they owed no duty to Plaintiff; that insofar as Plaintiff has alleged intentional misconduct, no negligence claim can lie; and that the complaint lacks facts demonstrating reckless indifference. I address each claim in turn.

### 1. FDCPA Claim

The FDCPA, 15 U.S.C. § 1962, prohibits debt collectors from making false or misleading representations when attempting to collect debts with an aim of eliminating "abusive debt collection practices." 15 U.S.C. § 1962(e). Whether a communication is deceptive or misleading is determined under "an objective standard based on the 'least sophisticated consumer,'" in order "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). Under this standard, "collection [communications] can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Id*. at 1319.

To establish a claim under the FDCPA, a plaintiff must prove that (1) the plaintiff is a consumer; (2) the defendant is a debt collector; and (3) the defendant committed an act or omission that violates the act. *See Ellis v. Solomon & Solomon, P.C*., 591 F.3d 130, 134 (2d Cir. 2010).

The U.S. Supreme Court has held that FDCPA can apply to attorneys engaged in litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995). And, past due rent is a debt encompassed by the FDCPA. *Emanuel v. American Credit Exchange*, 870 F.2d 805 (2d Cir. 1989). Thus, attorneys who are hired to collect rent may be subject to liability under the FDCPA, depending on their actions. *DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 619 Fed.Appx. 7, 10-11 (2d Cir. 2015) (vacating dismissal of complaint; finding colorable FDCPA claim against attorneys who demanded payment of legal fees in summary eviction proceeding for unpaid rent because there was no basis under New York law or an agreement between the tenant and landlord providing for payment of attorneys' fees; attorneys' conduct was an attempt to collect a "fee, charge, or expense incidental to the principal obligation" that is not "expressly authorized by the agreement creating the debt or permitted by law"); *see also Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, No. 17 Civ. 4525 (GHW), 2018 WL 2247206 (S.D.N.Y. May 15, 2019) (finding viable FDCPA against law firm that brought proceeding against tenant for unpaid rent). Based on the allegations in the Complaint, and New York law regarding when a landlord may collect rent, Plaintiff has stated a plausible claim under the FDCPA.

The Attorney Defendants do not challenge the allegations that Plaintiff is a consumer, that they are debt collectors within the meaning of the FDCPA, or that past due rent is a debt. And, while the Landlord Defendants say they are attempting to have the *Smalls* decision vacated and have arguments that would allow for the collection of rent,[5] they do not challenge the

---

[5] In particular, the Attorney Defendants contend that the New York City Department of Buildings has stated that the temporary certificate of occupancy did not include alteration of the residential units and that because the building is a condominium, the apartments are treated as a separate unit from the unit where the alterations occurred, meaning that the certificate of occupancy issued for the apartments is still valid. Whether this position is correct is not before the Court on this motion.

explicit language of New York Multiple Dwelling Law 302(1)(b) that states, "No rent shall be recovered by the owner" of a premises that lacks a certificate of occupancy during the period such certificate is lacking," and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent."  The New York Court of Appeals has strictly interpreted this language to mean that a landlord is barred from collecting rent where a valid certificate of occupancy is lacking.  *Chazon LLC*, 19 N.Y.3d at 415.[6]  Thus, they do not move to dismiss the FDCPA claim on the merits.

Instead, the Attorney Defendants argue the FDCPA claim is barred by the *Noerr-Pennington* Doctrine.  This doctrine provides that attempts to influence legislative, executive, administrative, or judicial action are immune from liability by virtue of the First Amendment right to petition the government for a redress of grievances.  *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136-39 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 669-70 (1965); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).  The doctrine has been applied to the initiation of state and federal court civil actions and related activities such as pre-suit demands and settlement.  *See e.g.*, *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983); *Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 101-102 (2d Cir. 1983); *Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, 313 F.Supp. 2d 339 (S.D.N.Y. 2004); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006).  The doctrine also has been extended by some courts to nonparties related to litigation.  *Baltimore Scrap*

---

[6] Plaintiff has asserted that the Attorney Defendants are collaterally estopped from taking a different position from that in the *Smalls* decision.  This argument need not be addressed on this motion.  Moreover, and in any event, it is unclear whether collateral estoppel applies as against the Attorney Defendants because the Attorney Defendants were not a party to the *Smalls* decision.  *ACS Recovery Servs., Inc. v. Figueiredo*, No. 07 Civ. 7359 (CLB) (LMS), 2008 WL 11517824, at *5 (S.D.N.Y. Jan. 15, 2008).

*Corp. v. David J. Joseph Co.*, 237 F.3d 394, 401 (4th Cir. 2001) (litigation funder protected by *Noerr-Pennington* doctrine); *Liberty Lake Inv., Inc. v. Magnuson*, 12 F.3d 155 (9th Cir. 1993) (same); *Navient Solutions, LLC v. Lohman*, 136 F.4th 518 (4th Cir. 2025)(doctrine applied to lawyers); *Balt. Scrap*, 237 F.3d at 401 ("non-parties often provide aid to litigants, whether through financial backing, legal assistance, amicus briefs, or moral support" and therefore limiting protection to litigants would "severely curtail the rights of all citizens to petition the government and to associate with others who do so."); *Rupert v. Bond*, 68 F. Supp.3d 1142, 1156–57 (N.D. Cal. 2014)("[P]rotected petitioning activity includes representing a party in a court proceeding—either in bringing suit or defending against a suit brought by another party— and filing papers with a court.").

Notably, the Second Circuit has never applied the *Noerr-Pennington* doctrine to bar claims under the FDCPA. *See Black v. Ganieva*, No. 21 Civ. 8824 (PAE), 2022 WL 2354916, at *22 (S.D.N.Y. June 30, 2022) ("The Second Circuit has not firmly resolved the parameters of *Noerr-Pennington* immunity outside the antitrust context."); *see also LightSquared Inc. v. Deere & Co.*, No. 13 Civ. 8157, 2014 WL 345270, at *4 (S.D.N.Y. Jan. 31, 2014) ("The Second Circuit 'has yet to decide whether the *Noerr-Pennington* doctrine ... must be applied mechanically in cases outside the antitrust area.'" (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 594 (S.D.N.Y. 2010)); *Shetiwy v. Midland Credit Mngmt.*, 980 F.Supp. 2d 461 (S.D.N.Y. 2013) (court was skeptical that the *Noerr–Pennington* Doctrine applies to FDCPA claims and found that sham exception could apply to debt collectors "alleged practice of [u]sing fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs, including by filing false attorney affirmations stating that service of the summons and complaint

10

has been made, when in fact it was not.") (internal quotation marks and citations omitted); *Michelo v. National Collegiate Student Loan Trust 2007-2*, 419 F.Supp.3d 668 (S.D.N.Y. 2019) (court was skeptical that the *Noerr-Pennington* Doctrine could preclude FDCPA claim of student loan debtors against student loan trusts, servicing agents, and law firm while noting allegations plausibly raised "sham exception" to the doctrine).

Moreover, Plaintiff contends the housing court action against her was a sham litigation thereby disqualifying the Landlord Defendants from *Noerr-Pennington* immunity (assuming the doctrine even applies).  *See Otter Tail Power Co. v. United States*, 410 U.S. 366, 380 (1973); *California Motor Transport Co.*, 404 U.S. at 512 (finding that frivolous litigation with a subjective motive of abusing the judicial process is not protected by *Noerr-Pennington*).  To ascertain whether the sham litigation exception applies and forecloses *Noerr-Pennington* protection from suit, a court must first assess whether the underlying lawsuit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and, if found objectively baseless, to then assess the litigant's subjective motivation for bringing the lawsuit. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus. ("PRE")*, 508 U.S. 49, 56, 60 (1993); *City of Columbia v. Omni Outdoor Advert., Inc.,* 499 U.S. 365, 380(1991) (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 508 n. 4 &10 (1988)).

What the above means is that even assuming the *Noerr-Pennington* Doctrine might apply generally to bar FDCPA claims (which is doubtful), there are fact issues regarding the sham litigation exception to the doctrine that cannot be resolved on a motion to dismiss, especially when the Attorney Defendants contend they have factual and legal arguments that would permit the collection of rent and give that the subjective motives for the lawsuit may need to be

11

evaluated.  *See Shetiwy v. Midland Credit Mngmt.*, 980 F.Supp.2d 461 (S.D.N.Y. 2013) (expressing skepticism that the *Noerr–Pennington* Doctrine applies to FDCPA claims and found that the sham exception could apply to debt collectors "alleged practice of '[u]sing fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs,' including by 'filing false attorney affirmations stating that service of the summons and complaint has been made, when in fact it was not[.]'"); *Michelo v. National Collegiate Student Loan Trust 2007-2*, 419 F.Supp.3d 668 (S.D.N.Y. 2019) (finding it doubtful that the *Noerr-Pennington* Doctrine could preclude the FDCPA claim of student loan debtors' against student loan trusts, servicing agents, and law firm and noting allegations plausibly raised "sham exception" to the doctrine).

Therefore, application of the *Noerr-Pennington* Doctrine to the FDCPA claim here, which is based on landlord-tenant action, is a novel issue that is premature to resolve on a motion to dismiss because there are factual disputes regarding whether the underlying housing court action was objectively without merit and subjectively frivolous, and, therefore a sham litigation. Accordingly, I recommend the motion to dismiss the FDCPA claim be denied.

### 2. Judiciary Law Claim

New York provides for a private cause of action against a lawyer who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."  N.Y. Judiciary Law § 487.  For it to apply, the attorney deceit must be distinct from common law fraud or legal malpractice.  *See Urias v. Daniel P. Buttafuoco & Assocs., PLLC*, 41 N.Y.3d 560 (2024).  The New York Court of Appeals has held that an action may be brought under the Judiciary Law even when an attempted deceit was unsuccessful.  *Amalfitano v.*

12

*Rosenberg*, 12 N.Y.3d 8, 9 (2009).  However, the law "was not designed to curtail attorneys' expressions of views concerning what the law is or should be, nor does it include merely poor lawyering, negligent legal research or the giving of questionable legal advice."  *Bill Birds v. Stein Law Firm, P.C.*, 35 N.Y.3d 173, 197 (2020) (Rivera, J., dissenting).  The law is rooted in criminal sanctions, and thus the standard for making out a claim is strict.  *Amalfitano*, 12 N.Y.3d at 8*; Cox v. Microsoft Corp.*, 737 N.Y.S.2d 1, 2 (1st Dep't 2002).  To state a claim under the law, a plaintiff must first plead an intent to deceive with particularity.  *See Jean v. Chinitz*, 163 A.D.3d 497, 499-500 (2018); CPLR 3016(b) ("Where a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail.")  Second, a plaintiff must allege a chronic and extreme pattern of legal delinquency.  *See O'Callaghan v. Sifre*, 537 F.Supp.2d 594, 596 (S.D.N.Y. 2008).  Third, a plaintiff must plead and establish actual damages caused by the deceit or collusion.  *See Amalfitano v. Rosenberg*, 428 F.Supp.2d 196 (S.D.N.Y. 2006), *aff'd*, 572 F.3d 91 (2d Cir. 2009).

Several courts encountering similar claims as the one asserted in this case have dismissed them for failing to allege sufficiently extreme and egregious conduct to satisfy the high threshold for stating a claim under the Judiciary Law.  *See e.g., Brake v. Slochowsky & Slochowsky*, *LLP*, 504 F.Supp.3d 103, 117 (E.D.N.Y. 2020) (dismissing with prejudice Judiciary Law claim against a law firm that brought rent collection action); *Ray v. Watnick*, 182 F. Supp. 3d 23, 29-31 (E.D.N.Y. 2016), as amended (May 3, 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017) (liability attaches "only if the deceit is 'extreme' or 'egregious' " and thus "the more appropriate context

13

for analysis is not the law applicable to comparable civil torts but rather criminal law"). [7]

Furthermore, the Judiciary Law does not extend to pre-litigation conduct, meaning that any pre-litigation demand for rent is not actionable under the Judiciary Law. *Bill Birds*, 35 N.Y.3d at 179-180. The case law Plaintiff cites is unpersuasive and distinguishable. *See Diaz v. Portfolio Recovery Assocs.*, LLC, No. 10 Civ. 3920 (ERK), 2012 WL 661456, at *7-8 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted*, No. 10 Civ. 3920 (MKB) (CLP), 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (involved far more egregious debt collection practices and a firm that purchased past due or defaulted-upon consumer debts from banks, credit card companies and other debt buyers and utilized law firm who allegedly knowingly filed time-barred claims against debtors using robo-signed filings in hopes that debtor would default and they could collect based on default judgment).

Here, the Complaint falls short of the kind of conduct that is actionable under Judiciary Law § 487. There are no facts that suggest an intent to deceive. Rather, the underlying suit was an ordinary collection action where Plaintiff asserted a defense and where the landlord withdrew the claim without prejudice. *See Remler v. Cona Elder L., PLLC*, No. 21 Civ.5176, 2022 WL 4586243, at *7 (E.D.N.Y. Sept. 29, 2022) (dismissing Judiciary Law claim where plaintiff alleged that defendant filed approximately 490 lawsuits on behalf of nursing homes and "failed to conduct a meaningful review of the validity of those claims"); *Bill Birds*, 35 N.Y.3d at 180 (determining that the Judiciary Law does not cover "nonmeritorious legal arguments" made in

---

[7] Plaintiff submitted a recent decision from the Appellate Division where a Judiciary Law claim was permitted to proceed past a motion to dismiss. See ECF No. 77-1, *Calixto v. A. Balsamo & Rosenblatt, P.C.*, index No. 506969/21. That case is distinguishable as the basis for allowing the claim past a motion to dismiss was that the allegations were that the defendants not only misrepresented the amount owed but continued to litigate knowing the allegations were false. In this case, the Complaint acknowledges that the Attorney Defendants discontinued the action within a short period of time after the defense of the lack of a certificate of occupancy was raised.

14

pleadings); *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008) (claims that attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to set forth violation of Judiciary Law § 487).  Absent far more particular facts showing an intent to deceive and misuse the courts by the Attorney Defendants, this claim does not survive the exacting pleading standard of the Judiciary Law.  Accordingly, I recommend the motion be granted with prejudice as to this claim.

### 3. GBL Claim

GBL Section 349 prohibits all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a). A plaintiff bringing a Section 349 claim must allege "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19 Civ. 9263 (NSR), 2021 WL 4066821, at *19 (S.D.N.Y. Sept. 7, 2021) (internal citations omitted).  When evaluating whether a particular action should be characterized as consumer-oriented, courts consider whether the action "(1) affected a broad swath of consumers, (2) consisted of standard practices that necessarily affect numerous consumers, or (3) is unique to the parties."  *Id.* "[W]hat matters is whether the defendants' allegedly deceptive act or practice is directed to the consuming public and the marketplace.  In other words, GBL § 349 is focused on the seller's deception and its subsequent impact on consumer decision-making[.]"  *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 171 N.E.3d 1192, 1198 (N.Y. 2021).  To satisfy the requirement of consumer-oriented activity in the real estate context, "courts have generally required that a plaintiff allege that the defendant affirmatively

15

and publicly sought transactions with consumers." *Hayrioglu v. Granite Cap. Funding, LLC*, 794 F. Supp. 2d 405, 410 (E.D.N.Y. 2011). The New York Court of Appeals explained in *Plavin v. Group Health Inc.* that it has found conduct to be consumer-oriented for the purposes of Section 349 where the deceptive statements at issue are contained in standard documents distributed to a group of consumers or in an "extensive marketing scheme" that had a "broader impact on consumers at large." 35 N.Y.3d 1, 10 (2020).

In *Lautman v. 2800 Coyle St. Owners Corp.*, the court dismissed with prejudice a GBL Section 349 claim against lawyers who instituted a rent collection proceeding because the plaintiff did not assert that he was misled by the allegedly false rent arrears and other charges claimed in the Housing Court proceeding. No. 13 Civ. 967, 2014 WL 2200909, at *10 (E.D.N.Y. May 23, 2014) (finding allegations regarding Housing Court proceedings did not involve the type of deceptive consumer-oriented conduct covered by GBL Section 349); *see also Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.,* 701 F.Supp.2d 340, 355 (E.D.N.Y. 2010) (adopting Magistrate Judge's recommendation that the defendants' allegedly false misrepresentations made during civil court litigation were not sufficient to state a claim under Section 349).

Indeed, several courts have dismissed GBL claims brought by tenants on the ground that the underlying conduct amounts to nothing more than a private transaction. *See e.g., Lautman*, 2014 WL 2200909, at *7-8; *Collazo v. Netherland Prop. Assets LLC*, No. 157486/2016, 2017 WL 947618 (Sup. Ct. Mar. 7, 2017) (dismissing Section 349 claim premised on rent overcharge because the claim "relate[d] to the private dispute between a tenant and a landlord concerning a lease"), *aff'd*, 64 N.Y.S.3d 537 (1st Dep't 2017); *Cooper v. 85th Estates Co.*, No. 155154/15, 2017 WL 5934003, at *11 (Sup. Ct. 2017) (recognizing that "[n]ot all interactions between

landlord and tenant ... satisfy the elements of GBL § 349" and stating that "allegations regarding how each plaintiff's initial rent was established would appear to be a private dispute between landlord and tenant, rather than a matter aimed at the general public"); *Nezry v. Haven Ave. Owner LLC*, No. 150023/10, 2010 WL 3338545, at *2 (Sup. Ct. 2010) (noting that case law "expressly holds that GBL § 349 does not apply to private landlord-tenant disputes"); *see also Aguaiza v. Vantage Props., LLC*, 893 N.Y.S.2d 19, 20 (1st Dep't 2010) (affirming dismissal of GBL § 349 claim because the plaintiff's allegations "presented only private disputes between landlords and tenants, and not consumer-oriented conduct aimed at the public at large"); *but see Brake v. Slochowsky & Slochowsky, LLP*, 504 F.Supp.3d 103 (E.D.N.Y. 2020) (dismissing GBL Section 349 claim against law firm that attempted to collect past due rents; allegations that law firm had engaged in pattern and practice of misrepresenting the fact and amount of rent due insufficient to show harm to public); *Finch*, 2020 WL 5848616, at *6 ("[P]laintiff's allegation regarding the number of eviction actions filed by a law firm, without more, does not enable a court to draw the reasonable inference that defendants are engaged in a pattern of misconduct involving other tenants." (internal quotation omitted)); *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 112 F. Supp.3d 160, 167 (S.D.N.Y. 2016) ("[A]lthough the SAC alleges in conclusory fashion that '[defendant] has filed suits against consumers other than [plaintiff] demanding judgment that includes attorney's fees when the claims were limited to claims that did not allow for recovery for attorney's fees,' this allegation falls short of establishing that Abrams's conduct had a 'broader impact on consumers at large.'").

The rationale for dismissal of these claims in the cases cited above applies with equal force to the GBL claim against the Attorney Defendants in this case. This case boils down to a private dispute between a landlord and a tenant over the impact of the expiration of a temporary certificate of occupancy in a particular building.[8] Moreover, that a landlord uses the same law firm to bring actions against multiple tenants in the same building who have not paid their rent is not a basis for asserting a claim against the law firm or finding that it has engaged in a pattern and practice of improper litigation that affects the *public*. The Attorney Defendants are bound by the Rules of Professional Conduct and their actions in court are on behalf of clients in individual matters. To stretch the GBL to cover the conduct alleged would open a Pandora's Box of issues related to the practice of law and access to the courts and lawyers. None of the cases cited by Plaintiff are persuasive and/or they are distinguishable. *See McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp.3d 239, 255 (W.D.N.Y. 2019) (involved allegations that the defendants bought consumer debts and judgments in bulk and attempted to enforce debt that they did not have the legal right to collect, not individual landlord-tenant action based on a specific situation at a specific building); *Rozier v. Fin. Recovery Sys., Inc.*, No. 10 Civ. 3273 (DLI) (JO), 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (a consumer debt collection case where the use of a form collection letter mailed to thousands of customers was

---

[8] Plaintiff submitted a recent decision from the Appellate Division where a GBL claim was permitted to proceed past a motion to dismiss. See ECF No. 77-1, *Calixto v. A. Balsamo & Rosenblatt, P.C.*, index No. 506969/21. That case is distinguishable insofar as there was no written lease for the apartment establishing rent, there were defects in the apartment for which the tenant withheld rent, and the lawyer was seeking to recover more than what the plaintiff withheld and continued the action even after the plaintiff paid the amount of withheld rent. The basis for allowing the claim past a motion to dismiss was that the allegations were that the defendants engaged in deceptive conduct by suing tenants for significantly more than the amount owed and misrepresenting the amount owed to the court. The court did not analyze whether the conduct was consumer oriented. Further, in this case, there is no allegation that the amount of rent due was inflated; rather, the allegation is that the rent may not be collected due to the lack of a valid certificate of occupancy.

at issue and did not involve a tenant/building specific issue); *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 588 (E.D.N.Y. 2015) (consumer debt collection case where form letter issued to thousands of consumers requesting improper fee; court did not discuss consumer-facing nature of conduct in depth); *Samms*, 112 F. Supp.3d at 167 (consumer debt case where law firm filed nearly 150 different actions seeking fees in different consumer debt collection actions that were not allowed by contract or law); *Sanchez v. Ehrlich*, No. 16 Civ. 8677 (LAP), 2018 WL 2084147, at *11 (S.D.N.Y. Mar. 29, 2018) (cursory, non-persuasive discussion of consumer-facing conduct which was alleged to be commencement of housing court proceedings against multiple tenants for rent they did not owe; no citation to New York case discussing public-facing requirement of GBL Section 349 and against weight of authority); *Lozano v. Grunberg,* 195 A.D.2d 308 (App. Div. 1st Dept. 1993) (summary decision court did not address how Section 349 applies; opinion focused on jurisdiction of court in connection with claim for injunctive relief); *Myerson v. Prime Realty Servs., LLC*, 7 Misc.3d 911, 921 (Sup. Ct. N.Y. Co. 2005) (case involved dispute over landlord's request for tenant's social security number; did not involve case against counsel for landlord; court refused to address landlord's argument that conduct was not public-facing because it was raised on reply).   Accordingly, I recommend that the GBL claim be dismissed with prejudice.[9]

---

[9] Although not argued by Defendants, the Court notes that  some courts have declined to exercise jurisdiction over Section 349 claim where they would predominate over FDCPA claims.  *Lautman*, 2014 WL 2200909, *8. *Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, No. 17-cv-4525, 2018 WL 2247206 (same; noting that discovery on GBL claim would overwhelm that on FDCPA claim because it would involve development of evidence regarding numerous other housing court petitions filed by law firm, whereas FDCPA claim pertained only to the conduct toward plaintiff).  This Court agrees that the GBL claims would predominate if they were allowed to proceed.

### 4. *Negligence Claims*

To assert a negligence claim against an attorney, a plaintiff must show that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity. *See Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer & Wood*, 590 N.Y.S.2d 831 (1992); *Ossening Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 541 N.Y.S.2d 335 (1989). Plaintiff has no contract with the Attorney Defendants. To the contrary, the Attorney Defendants' duty ran to their clients—the Landlord Defendants. *Delaney*, 761 F. Supp. 3d at 674 (collecting cases); *Nelson v. Kalathara*, 48 A.D.3d 528 (2d Dept. 2008); *Michalic v. Klat*, 128 A.D.2d 505, 506 (2d Dep't 1987).

While the above is generally true, Plaintiff argues that a duty of care arises not because of the relationship between Plaintiff and the Attorney Defendants, but rather under the GBL and the FDCPA. This argument is persuasive. New York courts have recognized that a statute that is designed to protect a distinct class of persons from a particular harm may create an additional standard of care towards such persons, the violation of which constitutes negligence per se. *See German by German v. Fed. Home Loan Mortg. Corp.*, 896 F.Supp. 1385, 1396 (S.D.N.Y. 1995) (numbering added) (citing *Martin v. Herzog*, 126 N.E. 814 (N.Y. 1920)); *Jordan v. Tucker, Albin & Assocs.*, No. 13 Civ. 6863, 2017 WL 2223918, at *12 (E.D.N.Y. May 19, 2017); *Barnes v. Stone-Quinn*, 606 N.Y.S.2d 485, 486-87 (N.Y. App. Div. 1993); *Elliott v. City of N.Y.*, 747 N.E.2d 760, 762 (N.Y. 2001) (finding "as a rule, violation of a state statute that imposes a ... duty constitutes negligence per se"). And, courts in this district have recognized that an alleged violation of the GBL and FDCPA constitutes a plausible allegation of negligence per se because both statutes were designed to protect a distinct class of persons (*i.e.*, debtors in the case of the FDCPA) from

20

a particular harm (*i.e.*, improper and fraudulent debt collection practices). *Sanchez*, 2018 WL 2084147, at *7 (finding that a plaintiff had adequately pleaded negligence per se under New York law based on an alleged violation of GBL 349 and FDCPA, but the Court did not address intentional conduct allegations precluding negligence claim); *see also Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. Sept. 19, 2012), *aff'd*, 529 Fed.Appx. 45 (recognizing debt collectors owe a duty of reasonable care to debtors in the collection of debts). Because I recommend that the GBL claim be dismissed, a negligence per se claim cannot be premised on that statute if the court adopts the recommendation.  However, because I recommend that the motion to dismiss the FDCPA be denied, a negligence per se claim can be premised on the alleged violation of the FDCPA claim.

To succeed on a claim of negligence per se, a plaintiff also must prove causation and damages. *Dance v. Town of Southampton*, 467 N.Y.S.2d 203, 206 (N.Y. App. Div. 1983); *In re GE/CBPS Data Breach litigation*, No. 20 Civ. 2903 (KPF), 2021 WL 3406374, at *10 (S.D.N.Y. Aug. 4, 2021) (citing *Timperio v. Bronx-Lebanon Hosp. Ctr*., 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019)). Defendant does not argue on this motion that Plaintiff fails to adequately plead causation and damages.  Therefore, I do not address these elements.  Accordingly, I recommend that the motion to dismiss the negligence claim be denied because Plaintiff has stated a viable theory of negligence per se premised on a violation of the FDCPA, which has been plausibly pleaded.  See *Sanchez,* 2018 WL 2084147, at *8 (finding that the complaint set forth plausible theory of negligence per se based on alleged breach of FDCPA and GBL 349 and did not analyze whether plaintiff sufficiently pleaded causation because it was not argued on the motion).

21

Plaintiff argues that the negligence claims should be dismissed because under New York law, "intentional conduct ... cannot form the basis of a claim founded on negligence." *Morrow v. MetLife Invs. Ins. Co.*, 113 N.Y.S.3d 421, 423 (4th Dep't 2019); *see also Borrerro v. Haks Grp., Inc.*, 87 N.Y.S.3d 618, 622 (2d. Dep't 2018) (affirming dismissal of negligence claim based on "intentional, rather than negligent, conduct"); *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993) (recognizing the "mutual exclusivity" of negligent and intentional conduct). The "New York courts have rejected uniformly such attempts to transmogrify intentional torts into negligence." *Schmidt v. Bishop*, 779 F. Supp. 321, 324 (S.D.N.Y. 1991).  Again, while the above is generally true, Defendants' cases do not deal with claims of negligence per se, which are based on a violation of a specific type of statute.  Further, the FDCPA is a strict liability statute, such that intent need not be proven to establish a violation.  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996); *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp.2d 643, 661 (S.D.N.Y. 2006).  And, there is no prohibition on pleading in the alternative.  *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15 Civ.5345 (AJN) (KHP), 2019 WL 1430155, at *5 (S.D.N.Y. Mar. 29, 2019) (pleading need not be explicit to plead theories in the alternative); *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 55 n.3 (2d Cir. 2004) (noting that inconsistent theories may be pleaded under Federal Rule 8); *Brown v. City of New York*, No. 02 Civ. 6337 (NG) (LB), 2005 WL 758781, at *4 (E.D.N.Y. Mar. 30, 2005) ("While it is true that the same factual predicate cannot support both a finding of liability based on reckless or intentional conduct and a finding of liability based on negligent conduct, [P]laintiff is free to plead alternate theories of liability, even if those theories are inconsistent.... It will be up to the trier of fact to determine which, if either,

theory is proven by [P]laintiff.") (internal citations omitted)).  Therefore, I recommend that the motion to dismiss the negligence per se claim be denied.

The Attorney Defendants argue the gross negligence claim should be dismissed for essentially the same reasons as the negligence claim should be dismissed, although they also argue that the pleadings fail to allege the sort of recklessness necessary to state a claim of gross negligence insofar as Plaintiff is merely alleging that S&H should have had a different interpretation of the *Smalls* decision and/or should not have proceeded with the action against Plaintiff because of the outcome of the *Smalls* decision.

Gross negligence, used interchangeably with willful negligence, differs "in kind, not only degree, from claims of ordinary negligence. It is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 284 (N.Y. 1993).  Willful negligence is defined as "that degree of neglect arising where there is reckless indifference to the safety of human life or an intentional failure to perform a manifest duty to the public, in the performance of which the public and the party have an interest[]." 41 N.Y. Jur. Negligence § 28 now 79 N.Y. Jur. Negligence 2d § 39; *see also Grey v. American Airlines, Inc.*, 227 F.2d 282, 285 (2d Cir. 1955) (stating there "must be a realization of the probability of injury from the conduct, and a disregard of the probable consequences of such conduct").  Similarly, "recklessness" is defined as "a wanton or heedless indifference to consequences, an indifference whether wrong is done or not, indifference to the rights of others, although it does not necessarily mean that the act is done intentionally or purposely." *Id*.  In *Sanchez*, the court in a similar situation allowed a negligence per se claim to proceed but dismissed a gross negligence claim because the complaint did not plausibly plead

23

the type of willful negligence or recklessness necessary to state a claim.  2018 WL 2084147, at *6-8.[10]  The same outcome is warranted here.  The Attorney Defendants are alleged to have ignored or misinterpreted the *Smalls* decision in bringing the action against Plaintiff.  However, this conduct does not come close to meeting the standard for gross negligence set forth above.  No specific reckless conduct is alleged, and the intent to deceive is premised simply on bringing a legal action for which there was a defense and dismissal without prejudice.  Therefore, I recommend the gross negligence claim be dismissed.

### CONCLUSION

For the reasons discussed above, I recommend the motion to dismiss be granted with respect to the GBL, Judiciary Law, and gross negligence claims and that the GBL and Judiciary Law claims be dismissed with prejudice.  It may be possible for the Plaintiff to re-plead facts to plausibly allege a gross negligence claim, so I recommend that that claim be dismissed without prejudice.  I recommend the motion be denied with respect to the FDCPA and the negligence per se claims against the Attorney Defendants.

Dated: March 18, 2026
New York, New York

Respectfully submitted,

Katharine H. Parker
United States Magistrate Judge

---

[10] Plaintiff cites *Crespo v. Gutman, Mintz*, Baker & Sonnenfelt, LLP, 2025 WL 871637, at *9 (S.D.N.Y. Mar. 20, 2025), to argue that the gross negligence claim should not be dismissed.  However, *Crespo* addresses this claim in two sentences and specifically references evidence that the defendant intentionally lied to the plaintiff about his statutory rights – something not alleged here.  Therefore, this case is not persuasive.

**NOTICE**

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.** *See also* **Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If a Defendant files written objections to this Report and Recommendation, Plaintiff may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). If Plaintiff files written objections, Defendants may respond to such objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2);** *see also* **Fed. R. Civ. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Woods. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b);** *Thomas v. Arn*, **474 U.S. 140 (1985).**